**In re Randy Russell STEFFENS & Sharon Ann Steffens, Debtors.**

**Sharon STEFFENS & Richard V. Fink, Trustee, Plaintiffs,**

v.

**CITICORP MORTGAGE, INC., Defendant.**

**Bankruptcy No. 92–42582–W–13. Adv. No. 92–4321–W–13.**

United States Bankruptcy Court, W.D. Missouri.

Jan. 4, 1993.

Larry G. Chipman, Independence, MO, for debtors.

William P. Whitaker, Kansas City, MO, for Citicorp Mortg.

Rick Fink, Chapter 13 Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Randy Russell Steffens and Sharon Ann Steffens, formerly known as Sharon Ann Ridenour, hereinafter known as debtors, filed this adversary action against Citicorp Mortgage, Inc. to set aside a pre-petition foreclosure sale by Citicorp Mortgage, Inc. Debtors contended that the foreclosure constituted a fraudulent transfer in the technical sense of the word under the provisions of 11 U.S.C. § 548(a)(2)(A) and (B)(i).

Sharon Steffens testified that they had bought the house in 1985 for $49,900.00; that they had added siding, guttering, repair to garage door, added an attic fan, put on storm doors and had replaced one window with a thermal window. In addition she testified they had put in new kitchen and bathroom floors. As owner she testified that it was her opinion the value of the house at the present time was $55,000.00.

Citicorp introduced the appraisal of R. Cameron Miller, an appraiser with Don Meier and Associates. It was Mr. Miller's opinion that the property was worth $48,000.00. However, the Court notes that of the six comparables which Mr. Miller used (all of which were within ¾ mile of the subject property), only two sold for less than the amount at which he appraised debtor's house. Further, the two houses which were sold for slightly less than the amount at which he appraised debtor's house, were each 120 square feet smaller than debtor's house and were seven years and five years older than debtor's house. The other houses which he used as comparables and which were closer in size to the debtor's house sold for $54,000.00, $51,000.00 and $49,990.00 respectively. The one house that was larger than debtor's house by some 250 square feet sold for $59,500.00.

After considering the evidence presented the Court believes the appropriate value of the debtor's residence at the time of the foreclosure was $53,000.00. The next question then becomes was a reasonably equivalent value realized at the foreclosure sale by the sale of the property for $33,250.00. Although the parties did not favor the Court with any evidence as to the balance due on the promissory note executed by Sharon Ann Steffens back in 1985, the Court believes from the schedules filed by the debtors that the balance was slightly less than $33,250.00 and that is the reason Citicorp Mortgage Company bid $33,250.00 at the time of the foreclosure because that was their debt, interest and cost. Citicorp has filed no proof of claim with the Court and apparently has no desire to file a proof of claim because they are thus paid in full.

■ 11 U.S.C. § 548(a)(2) has several requirements that the Court must find before there is a fraudulent transfer. Basically these items are as follows: (1) that there was a transfer of the property, (2) that was made or incurred within one year of the date of the filing of the petition, (3) where the debtor was insolvent on the date the transfer was made or became insolvent as a result of such transfer and (4) received less than the reasonably equivalent value in exchange for such transfer.

Citicorp has not chosen to assert that the transfer was not made nor made within the one year time span, nor that the debtor was not made insolvent as a result of the transfer. Instead it has focused the entire defense to this action on the basis of whether or not $33,250.00 was a reasonably equivalent value for the property. It must be noted that there is no requirement of intent on the part of the transferor or transferee to hinder, delay or defraud creditors in 11 U.S.C. § 548(a)2), unlike every state statute or the pre 1978 Bankruptcy Reform Act.

The Fifth Circuit was the first circuit to address this issue. In *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980), the Fifth Circuit set aside a regularly conducted non-judicial foreclosure by a mortgage holder and sent a shock wave through the lending community. Allegedly, but not actually, that Court established a 61% "bright line rule" as the magic percentage of fair market value that a foreclosing creditor must bid at sale to escape the clutches of 11 U.S.C. § 548(a)(2).

Shortly thereafter the Ninth Circuit weighed in with *In re Madrid*, 725 F.2d 1197 (9th Cir.1984) in which it opined that there was no transfer at foreclosure since the legal transfer had taken place at the time the mortgage was executed. Since that was more than one year before the bankruptcy filing, the basic time requirement of § 548 was not met and the Trustee could not upset the foreclosure sale.

■ Thereafter the Eighth Circuit issued its opinion in the *Hulm* case. See *In re Hulm*, 738 F.2d 323 (8th Cir.1984), *In re Hulm*, 45 B.R. 523 (Bankr.D.N.D.1984). The Eighth Circuit laid down no easily ap-

plied percentages but instead used the very words of the statute, i.e., "reasonably equivalent value" as the measuring rod to be applied to each set of facts. It is before that backdrop that the Court must determine whether a bid of $33,250.00 against a house with a fair market value of $53,-000.00 is the "reasonably equivalent value" thereof.

The Court realizes that a property being knocked down on the courthouse steps does not have the value that the same property might have if it were merchandised adequately and in the usual course of business pertaining to said sales. However, this Court in this Circuit is neither prepared nor disposed to accept the premise that any regularly advertised and regularly conducted foreclosure sale is prima facially immune from attack under § 548(a)(2). Were there not other reasons for the outcome, this Court would be prepared to rule this sale a technically fraudulent conveyance under 11 U.S.C. § 548(a)(2).

■ The reason that this Court should not and will not so rule is because debtors were neither insolvent nor became insolvent by virtue of the foreclosure. Although no party raised the issue at the hearing, debtors had pleaded (inter alia): "... and the Debtor was insolvent on the date the transfer was made" in paragraph 13 of debtors' complaint. Creditor had pleaded (inter alia): "... denies the allegations of paragraph 12, 13 and 14 ..." in paragraph 7 of its response. Thus, that issue was joined although not argued.

It is the debtors'/plaintiffs' burden to sustain all of the statutorily mandated allegations in their complaint. *Maxwell Land–Grant Co. v. Dawson*, 151 U.S. 586, 601–06, 14 S.Ct. 458, 463–64, 38 L.Ed. 279 (1894); *In re Wolff*, 22 B.R. 510, 512 (Bankr. 9th Cir.1982). Neither party adduced evidence, but the Court can take judicial notice of the schedules and statements which are a part of this file. Those schedules reveal that debtors possessed substantial property other than the house. Schedule B shows $10,382.55 in personal property. Schedule D shows one claim of $4,500.00 secured by said property. In ad-

dition debtors possessed an unvalued interest in a pension plan. Debtors listed no priority debts in Schedule E. Debtors listed no unsecured claims in Schedule F. In other words, without considering the real estate, debtors are neither insolvent nor became insolvent because of the foreclosure. Granted, the foreclosure was on May 19, 1992, and the schedules were filed as of August 7, 1992, almost three months later. However, the presumption that proven circumstances are presumed to have existed earlier unless otherwise explained, would indicate that debtors were no worse off in May than in August. *Girardi v. Gates Rubber Co. Sales Division, Inc.*, 325 F.2d 196, 203 (9th Cir.1963).

Accordingly the Court finds that the debtors were neither insolvent nor rendered insolvent at or after the foreclosure and thus concludes that their complaint must be DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law has required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.