# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

————

No. 01-6017WM
&
No. 01-6018WM

————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Richards & Conover Steel, Co., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Robert A. Pummill, Trustee, | * | |
| | * | Appeal from the United |
| Plaintiff - Appellee, | * | States Bankruptcy Court |
| | * | for the Western District of |
| v. | * | Missouri |
| | * | |
| Greensfelder, Hemker & Gale, | * | |
| | * | |
| Defendant - Appellant. | * | |
| | * | |
| and | * | |
| | * | |
| Robert A. Pummill, Trustee, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Ameristeel, Inc., | * | |
| | * | |
| Defendant - Appellant. | * | |

Submitted: August 7, 2001
Filed: September 28, 2001

Before  SCOTT,  DREHER, and McDONALD,[1] Bankruptcy Judges

DREHER, Bankruptcy Judge

This is an appeal from an order of the bankruptcy court awarding Appellee, Robert A. Pummill, Debtor's Chapter 7 Trustee ("Trustee"), judgments against Appellants, Ameristeel Inc. ("Ameristeel") and the law firm of Greensfelder, Hemker & Gale, P.C. ("GHG") in the sums of $10,153.05 and $10,331.90 respectively.  For the reasons stated below, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

In early 1999, Debtor Richard & Conover Steel, Co. ("Rich-Con"), in cooperation with one of its secured creditors, began the process of liquidating its operations.  A representative of the secured creditor was placed on site to accomplish liquidation of the secured creditor's collateral.  Ameristeel, Rich-Con's largest unsecured creditor, took the lead in forming an Unofficial Unsecured Creditors' Committee ("UUCC") to protect Rich-Con's unsecured creditors.  The UUCC employed an attorney from GHG.  During the initial meeting of the UUCC it was determined that Rich-Con would be asked to pay the fees of GHG, but that the members of the UUCC would ultimately be responsible for such payment should

---

[1]Judge David P. McDonald, Bankruptcy Judge, Eastern District of Missouri, sitting by designation.

Rich-Con fail to pay. A representative of Rich-Con was present at this meeting, understood and agreed that Rich-Con was responsible for paying the attorney's fees and expenses of the UUCC, and was made aware that if it did not pay, the UUCC would be responsible for doing so.

The purpose of the UUCC was to maximize the value of Rich-Con's assets in the hopes of making some distribution to the unsecured creditors. GHG and the UUCC assisted in maximizing the assets of Rich-Con by helping to liquidate collateral in an organized fashion and collecting accounts receivable. As a result, approximately $125,000 was generated for payment to unsecured creditors. GHG and the UUCC also negotiated with a secured creditor and obtained its commitment to reduce the prepayment penalty on the secured loan by $100,000, thus reducing Rich-Con's obligations upon prepayment and freeing up more money for unsecured creditors.

GHG billed the UUCC on a regular basis until January 2000, but the UUCC did not pay. Instead, GHG sent a letter to Rich-Con requesting that Rich-Con pay GHG's bill because it believed Rich-Con had agreed to do so. At trial, a representative of Rich-Con acknowledged the agreement to do so. On January 28, 2000, Rich-Con wrote a check to Ameristeel in the amount of $10,153.05 to reimburse Ameristeel for legal fees and expenses paid by the UUCC to GHG. On the same date, Rich-Con paid $7,331.90 to GHG as payment of legal fees and expenses incurred by the UUCC. On February 1, 2000, Rich-Con paid another $3,000.00 to GHG for additional legal fees and expenses incurred by the UUCC.

On February 15, 2000, an involuntary Chapter 7 bankruptcy was filed against Rich-Con by four unsecured creditors who chose not to cooperate with the UUCC. At the time, checks had been prepared for delivery to unsecured creditors in partial pro rata distribution on their claims against Rich-Con. The funds to cover these checks were in large measure the product of the efforts of GHG. Upon being appointed, however, the Trustee invalidated the checks, and the unsecured creditors

3

were not paid. Instead, the funds on hand at the time the involuntary bankruptcy was filed were expected to be used to help defray administrative expenses in the bankruptcy case.

The Trustee filed separate adversary proceedings against Ameristeel and GHG (collectively, "Defendants") seeking to recover the payments that had been made to them. The complaints specifically alleged that both Defendants had received preferential transfers under 11 U.S.C. § 547. In response, Defendants asserted that they were not creditors of Rich-Con because the efforts of GHG had been performed under direction, from and solely on behalf of, the unsecured creditors, and therefore the transfers to them were not subject to avoidance. Although Ameristeel was a creditor of Rich-Con, the parties agreed that the funds paid to Ameristeel were for reimbursement of the attorneys' fees and expenses incurred by the UUCC and not as payment of Ameristeel's trade debt.

During trial, the Defendants introduced evidence of the work GHG had done in assisting in liquidation, recovering receivables, and reducing the prepayment penalty. Defendants' witnesses testified that all such efforts were performed for the UUCC and not for Rich-Con. Accordingly, Defendants proved they were not creditors of Rich-Con. During trial, it became apparent to the Trustee that this evidence, while proving a lack of debtor-creditor relationship, also provided proof of an essential element of a fraudulent conveyance case under 11 U.S.C. § 548(a)(1)(B), namely lack of reasonably equivalent value. During closing arguments, the Trustee orally moved the court for leave to amend his complaint to conform to the evidence. There was no dispute that the UUCC was established to maximize the value of the Rich-Con's assets during the liquidation in hopes of providing payment to unsecured creditors. There was also no dispute that the funds paid to Defendants were for payment of or in reimbursement for attorneys' fees and expenses incurred by and on behalf of the UUCC, that payments by Rich-Con were made within a year of the filing date, and that Rich-Con was insolvent at the time of the transfers to Defendants. The only element

4

remaining to be proved was whether Rich-Con had received less than reasonably equivalent value, or in fact any value, in exchange for the transfer of funds to the Defendants. Since the Defendants testified they were not creditors of Rich-Con, the Trustee argued that Rich-Con could not have received any value in exchange for the transfer of such funds to Defendants.

Defendants opposed the motion to amend on the basis that it was not a trivial amendment. They asserted that if they had known they were trying a fraudulent conveyance case, they would have tried their case differently. They argued that the focus of the defense would have been different and they would have had their witnesses testify that Debtor, as well as the UUCC, had received the benefit of the work done by GHG. Alternatively, they argued the merits, asserting that there was no fraudulent conveyance because, on the evidence produced at trial, reasonably equivalent value had been given in exchange for the payment of the UUCC's attorneys' fees and expenses.

Before taking the case under advisement, the bankruptcy court offered Defendants an opportunity to further brief the issues. Defendants declined and did not ask for a continuance or for an opportunity to offer additional evidence.

The bankruptcy court granted the Trustee's oral motion to amend the pleadings to conform to the evidence, specifically finding that the fraudulent conveyance issue was actually tried by the parties and that the Defendants had been given a full opportunity to defend against that claim. In defense of the section 547 action, Defendants had presented evidence showing that GHG and Ameristeel were not creditors of Rich-Con for purposes of section 547 and that the benefits of the work done by GHG and the UUCC flowed to the unsecured creditors, not to Rich-Con. Based upon this evidence, the court determined that an action for fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) had been tried by the parties and there would be no denial of due process if the amendment was allowed.

5

The bankruptcy court then addressed the merits of an action under 11 U.S.C. § 548(a)(1)(B). The court found that the Trustee had established the four elements of a cause of action under 11 U.S.C. § 548(a)(1)(B): (1) a transfer of property, (2) made or incurred within one year of the date of the filing of the petition, (3) the Debtor's insolvency on the date of the transfer, and (4) a transfer in exchange for less than the reasonably equivalent value. Steffans v. Citicorp Mortgage, Inc., 148 B.R. 914, 916 (Bankr. W.D. Mo. 1993). Defendants conceded the first three elements, leaving only the issue of whether reasonably equivalent value had been exchanged. The court concluded that Rich-Con had received no value in exchange for the payment of the attorneys' fees and expenses and the transfers were fraudulent under 11 U.S.C. § 548(a)(1)(B). A judgment in the amount of $10,331.90 plus interest was entered against GHG. A judgment in the amount of $10,153.05 plus interest was entered against Ameristeel.[2]

In these cases, consolidated for the purposes of appeal, GHG and Ameristeel appeal both the bankruptcy court's allowance of the amendment to conform to the evidence and the finding that Rich-Con did not receive reasonably equivalent value in exchange for its payments to the Appellants.

## DECISION

I.     STANDARD OF REVIEW

An appellate court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See* FED. R. BANKR. P. 8013; Martin v. Cox (*In re* Martin), 140 F.3d 806, 807 (8th Cir. 1998); Merchants Nat'l Bank v. Moen (*In re* Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999). "A finding of fact is 'clearly

---

[2]The court also dismissed the third party complaint for lack of subject matter jurisdiction, but that issue is not on appeal.

erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)(*quoting* United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). A bankruptcy court's factual findings may not be overturned on appeal merely because the appellate court may have decided the issue differently. *See* Anderson, 470 U.S. at 573.

The bankruptcy court's decision to allow an amendment to conform to the evidence pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, as incorporated by Federal Rule of Bankruptcy Procedure 7015, is reviewed only for abuse of discretion. Perkins v. Spivey, 911 F.2d 22, 34-35 (8th Cir. 1990); Tatge v. Tatge (*In re* Tatge), 212 B.R. 604, 610 (B.A.P. 8th Cir. 1997)(*citing* Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994)). An abuse of discretion is a decision based on an erroneous view of the law or clearly erroneous factual findings. KHBS Broadcasting v. Sanders *(In re* Bozeman), 226 B.R. 627, 631 (B.A.P. 8th Cir. 1998).

With respect to the bankruptcy court's decision on the merits, the parties argue that the applicable standard of review is *de novo*. If the focus of this appeal was the bankruptcy court's interpretation and application of section 548(a)(1)(B)(i), the review would be *de novo*. *See* United States v. Brummels, 15 F.3d 769, 771 (8th Cir. 1994)(standard of review for the lower court's "application of facts to the legal interpretation" of a statute is *de novo*); Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987)(reviewing court considers bankruptcy court's statutory constructions *de novo*). The issue on this appeal, however, is the finding of fact by the bankruptcy court that no reasonably equivalent value was received by Rich-Con in exchange for the payment of attorneys' fees and expenses to GHG and the reimbursement of such fees and expenses to Ameristeel. The issue of the reasonable equivalence is a question of fact. Jacoway v. Anderson (*In re* Ozark Rest. Equip. Co., Inc.), 850 F.2d 342, 344 (8th Cir. 1988).

## II.    THE AMENDMENT

Amendments to conform to the evidence presented at trial are addressed in Bankruptcy Rule 7015 which incorporates Rule 15(b), Federal Rules of Civil Procedure:

> (b)   Amendments to Conform to the Evidence.   When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.  If evidence is objected to at the trial on grounds that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

FED. R. CIV. P. 15(b).  Civil Rule 15(b) permits parties to amend their pleadings " to bring the pleadings in line with the actual issues upon which the case was tried[.]" Brown v. Cooper Clinic, P.A., 734 F.2d 1298, 1301 (8th Cir. 1984) (*quoting* Gallon v. Lloyd-Thomas, Co., 264 F.2d 821, 825 n. 3 (8th Cir.1959)), *cert. denied*, 454 U.S. 968 (1981); 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (2d.ed.  1990), § 1493.  A motion to amend to conform may be made at any time.  Kim v.  Nash Finch Co., 123 F.3d 1046, 1062 (8th Cir.  1997) (*citing* FED.  R.  CIV.  P.  15(b)).   However, by the plain language of the rule, the absence of such a formal amendment "does not affect the result of the trial."  FED.  R.

8

CIV. P. 15(b). The intent of the rule is "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." Harding v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982). Accordingly, FED. R. CIV. P. 15(b) is liberally construed and such amendments are freely granted. *See* Samoya v. Jodoin (*In re* Jodoin), 196 B.R. 845, 851 (Bankr. E.D. Cal. 1996), *aff'd,* 209 B.R. 132, 136 (B.A.P. 9th Cir. 1997)(*citing* 3 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE ¶ 15.13[2] (1996)).

Issues may be tried either by express or implied consent. FED. R. CIV. P. 15(b). There being no express consent in this case, the question here is whether Appellants impliedly consented to trial of a fraudulent conveyance claim. Implied consent "is much more difficult to establish and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. If they do not, there is no consent and the amendment cannot be allowed." WRIGHT & MILLER § 1493 (*citing* Gisriel v. Quinn-Moore Oil Corp. , 517 F.2d 699, 703 n.9 (8th Cir. 1975)). Stated differently, the test for such consent is "'whether the opposing party had a fair opportunity to defend and whether he would have presented additional evidence had he known sooner the substance of the amendment.'" *In re* Prescott, 805 F.2d 719, 724-25 (7th Cir. 1986)(*quoting* Hardin, 691 F.2d at 456).

Consent may be implied if evidence to support the claim was introduced at trial without objection. Shen v. Leo A. Daly Co., 222 F.3d 472, 479 (8th Cir. 2000)(*citing* St. Joe Minerals Corp. v. Occupational Safety and Health Review Comm'n, 647 F.2d 840, 844 (8th Cir. 1981)). It may also, in a proper circumstance, be found where a party introduces evidence going to a new theory. WRIGHT & MILLER § 1493. But, where evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there is no indication at trial that the party was seeking to raise a new issue, there is no such implied consent. Id.; Gallon v. Lloyd -Thomas Co., 264 F.2d 821, 827 n.3 (8th Cir. 1959)(no implied consent when case was tried on fraud theory,

although such evidence also goes to proving any additional unpled theory); <u>Parsiser v. Christian Health Care Systems, Inc.</u>, 816 F.2d 1248, 1252 (8th Cir. 1987)(court properly denied plaintiff's post-trial motion to amend where plaintiff tried case on a fraud theory, even though some of its evidence was also relevant to new theory of tortious interference with contract); <u>Standard Title Ins. Co. v. Roberts</u>, 349 F.2d 613, 619 (8th Cir. 1965)(no implied consent by offer of evidence on pleaded theory which also goes to prove unpled theory).

In allowing the oral amendment to conform to the evidence the bankruptcy court relied heavily on <u>Bahr v. Nett</u> (<i>In re</i> <u>Nett</u>), 70 B.R. 868, 871 (Bankr. W.D. Wis. 1987). The <u>Bahr</u> court enunciated a two-part test to decide whether it is appropriate to allow an amendment to conform to the evidence: (1) was the new issue or theory actually tried, or stated differently, was there evidence to support a finding on such issue or theory and, (2) did the opposing party have a full opportunity to defend on the alternate theory. <u>Id</u>.

The bankruptcy court correctly determined that the new theory of fraudulent conveyance had, in fact, been tried. Both prior to and during trial, Appellants had made clear that one element of a preference action was missing because the transfers to them were not an account of an antecedent debt of Rich-Con, but were instead in payment of a debt owed by the UUCC. The court noted, however, that, in defending the Trustee's preference action with such evidence, Defendants concurrently established a case against themselves for fraudulent conveyance because the payment of a third party's debt is usually solely for the benefit of the third party.

The court went on to find that Appellants had adequate notice and opportunity to defend. The court pointed to the fact that Appellants knew from the start that the defense would urge that the payments were made to pay debts of the UUCC. In concluding, the court found ". . . based on the testimony of the witnesses, the Trustee cannot prevail on his section 547 case. However, that same testimony supports a

10

ruling in favor of the Trustee on an essential element of a section 548 cause of action. The Defendants cannot have it both ways. They cannot rely on the testimony of the witnesses as a defense against the Trustee's section 547 cause of action, while expecting to be insulated from other causes of action that their testimony might establish." Pummill v. Greensfelder, Hemker & Gale, P.C., et.al., Adv. Nos. 00-4159 & 00-4160, slip op. at 11 (Bankr. W.D. Mo. Mar. 8, 2001).

While we agree that Defendants had adequate notice and opportunity to defend, we disagree with this reasoning. In fact, the Appellants *can* have it both ways. As previously noted, consent cannot be inferred when a party introduces evidence going to a pleaded cause of action and the evidence is also relevant to an unpled claim. "The reasoning behind this view is sound, since, if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless the fact is made clear." WRIGHT & MILLER § 1493 (*citing* Crawford v. Glenns, Inc., 876 F.2d 507, 513 (5th Cir. 1989)); State Exchange Bank v. Teague, 495 N.E.2d 262, 270 (Ind. Ct. App. 1986).

We affirm the bankruptcy court on this issue because Appellants were not prejudiced and had the opportunity to and did present evidence on the issue of reasonable equivalence. While it is true that Civil Rule 15(b) speaks to consent and does not expressly refer to prejudice as a basis for ruling on a motion to amend to conform, "Nonetheless, consideration of this factor is a valid exercise of the court's discretion and typically will be part of the court's analysis of whether there has been implied consent." WRIGHT & MOORE § 1493. Here, there simply was no prejudice.

Appellants' contention that they would have argued differently, focused their case differently and had witnesses testify that Debtor received benefits along with the UUCC misses the point. Reasonable equivalence is established by proving the benefits derived from the actions GHG took to earn the attorneys' fees and expenses

it was paid.  The Appellants did introduce such evidence at trial.  Accordingly, there was no prejudice to Appellants.

Additionally we note that had there been such prejudice, it would have been self-inflicted.  The court offered the Appellants an opportunity to more fully brief and they declined.  Moreover, they failed to seek an opportunity to offer additional evidence with respect to reasonable equivalence.[3]

III.    REASONABLE EQUIVALENCE

In order for the Trustee to prevail on a claim under 11 U.S.C. § 548(a)(1)(B), he must prove, by a preponderance of the evidence, that the payments to Appellants were not made in exchange for reasonably equivalent value.  11 U.S.C. § 548(a)(1)(b); Nordberg v.  Arab Banking Corp. (*In re* Chase & Sanborn Corp.), 904 F.2d 588, 593-94 (11th Cir. 1990); Ossen v.  Bernatovich (*In re* National Safe Northeast Inc.), 76 B.R. 896, 901 (Bankr. D. Conn. 1987).  This requires analysis of whether:  (1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was reasonably equivalent to what was received.

The record is devoid of any suggestion, and the parties did not contend, that the work done by GHG was not of a value reasonably equivalent to the amount of the fees it charged or that the transfer of funds were not in exchange for legal services rendered by GHG.   A transfer is in exchange for value if one is the quid pro quo of the other.  2 DAVID G. EPSTEIN, BANKRUPTCY § 6-49 at p. 33 (*citing In re* Galey,

---

[3]Cases cited by Appellants in support of their argument are not on point. Both Doyaga v. Steamfitters' Indus. Pension Fund (*In re* Smith), 204 B.R. 358 (Bankr. E.D.N.Y. 1997) and Mendelsohn v. Mack Fin. Corp. (*In re* Frank Santora Equip. Corp.), 202 B.R. 543 (Bankr. E.D.N.Y. 1996) dealt with pretrial motions to amend the pleadings.  Such motions are governed by Civil Rule 15(a) and require a wholly distinct analysis.

Inc., 119 B.R. 504, 513 (Bankr. W.D. Pa. 1990)). Once it is determined that the Debtor received the services of GHG then it is clear they were in exchange for the payment of GHG's fees, directly or indirectly, as the quid pro quo, one for the other. *Cf.* Dietz v. St. Edwards Catholic Church (*In re* Bargfrede), 117 F.3d 1078, 1080 (8th Cir. 1997). The only issue to be resolved is whether Rich-Con received value for the transfers.

For purposes of section 548, "'value' means property in satisfaction or securing of a present or antecedent debt of the debtor . . . ." 11 U.S.C. § 548(d)(2)(A). "The concept of reasonably equivalent value is a means of determining if the debtor received a fair exchange in the marketplace for the goods transferred. Considering all the factors bearing on the sale, did the debtor receive fair market value for the property." Jacoway v. Anderson, 850 F.2d at 344-45. "[T]he requirement of economic benefit to the debtor does not demand consideration that replaces the transferred property with something else tangible or leviable that can be said to satisfy the creditor's claims." EPSTEIN § 6-49, at 23 (1992). Rather, in deciding whether value has been transferred the court must examine "all aspects of the transaction and carefully measure the value of all benefits and burdens to the debtor, direct or indirect." Christians v. Crystal Evangelical Free Church (*In re* Young), 82 F.3d 1407, 1414 (8th Cir.1996), *vacated*, 521 U.S. 1114 (1997), *reinstated*, 141 F.3d 854 (8th Cir.1998), *cert. denied*, 525 U.S. 811 (1998). If the benefits are indirect, they must be "fairly concrete." First Nat'l Bank v. Minnesota Utility Contracting, Inc. (*In re* Minnesota Utility Contracting, Inc.), 110 B.R. 414, 420 (D. Minn. 1990).

The bankruptcy court correctly noted that equivalent value may be the satisfaction of an antecedent debt of the Debtor, but normally not the satisfaction of another party's debt." *See* Dietz v. St. Edward's Catholic Church, 117 F.3d at 1080 (no reasonably equivalent value when husband pays a spouse's debt from his separate assets) (*citing* Leonard v. Norman Vinitsky Residuary Trust (*In re* Jolly's Inc.), 188 B.R. 832, 842 (Bankr. D. Minn. 1995)(transfers made solely for benefit of third party

13

do not furnish reasonably equivalent value)); Biggs v. United States Nat'l Bank, 11 B.R. 524, 527 (D. Nev. 1980)(same). The court relied heavily on Gill v. Brooklier (*In re* Burbank Generator, Inc.), 48 B.R. 204 (Bankr. C.D. Cal. 1985) and Hall v. Arthur Young & Co. (*In re* Computer Universe, Inc.), 58 B.R. 28 (Bankr. M.D. Fla. 1986). In Gill, the bankruptcy court held that a corporation did not receive reasonably equivalent value when it paid the legal fees of an employee who had been indicted for racketeering. Gill v. Brooklier, 48 B.R. at 207-208. In Hall, the bankruptcy court held that a corporate subsidiary did not receive reasonably equivalent value when it paid (through delivery of computer equipment) the accounting fees of its parent corporation. Hall v. Arthur Young & Co., 58 B.R. at 30-31.

In this case, the bankruptcy court found that Rich-Con received no value from the services performed by GHG because all of the legal work done by GHG "benefitted the committee and the rest of the unsecured creditor community by increasing their distribution from the proceeds of the liquidation. The Debtor received absolutely no benefit from this legal work." Pummill v Greensfelder, slip op. at 15.

Appellants argue this was error for two reasons. First, they argue that at the time the payments were made Rich-Con was insolvent and owed a fiduciary duty to its creditors (not its shareholders) to maximize value for their benefit. When GHG helped Rich-Con maximize value, it assisted Rich-Con in performing its fiduciary duty, thereby delivering value. Second, and in less complicated fashion, Appellants argue that Rich-Con received value because the efforts of GHG resulted in maximizing assets, collection of receivables, and reduction of debt in the amount of $100,000.

We agree that the bankruptcy court erred in finding that no benefit accrued to Rich-Con as a direct result of, and in exchange for, the payment of attorneys' fees and expenses. The issue of reasonably equivalent value has to be analyzed from the perspective, not of what the parties expected would happen (i.e., funds would be paid to unsecured creditors), but from the perspective of whether and when value was

14

created and exchanged. As a direct result of the efforts of GHG, Rich-Con maximized its assets by collecting receivables and reducing its debts. Its fiscal situation was improved. Rich-Con received services of GHG just as it would have if it had hired the firm directly. In this context, it makes no difference who hired the firm and who was ultimately responsible for paying its fees. GHG transferred value in the form of legal services to Rich-Con.

It is true that transfers made "*solely* for [the] benefit of a [third] party do not furnish reasonably equivalent value." Dietz, 117 F.3d at 1080, (*citing In re* Jolly's, Inc., 188 B.R. at 842)(emphasis in original). But "a transfer on behalf of a third party may produce a benefit that ultimately flows to the debtor, albeit indirectly. If the indirect benefit constitutes reasonably equivalent value to the debtor, a transferee cannot avoid the transfer as fraudulent." Gill v. Brooklier, 48 B.R. at 206-207; *citing* Rubin v. Mfg. Hanover Trust Co., 661 F.2d 979, 991 (2d Cir. 1981); Klein v. Tabatchnick, 610 F.2d 1043, 1047 (2d Cir. 1979). The party claiming to have delivered value must quantify it. Gill v. Brooklier, 48 B.R. at 207. As a leading commentator points out, the rule that a debtor who pays the debt of another normally does not receive value is subject to

> a rather large qualification . . . *Even though the debtor makes a transfer, or incurs an obligation for consideration that moves (in form or substance) **directly** to a third person, the debtor nevertheless receives value if she receives an economic benefit indirectly (in form or substance).* The consideration need not flow directly to her to satisfy the value component of reasonably equivalent value. Value requires only that the transfer result, whether directly or indirectly, in economic benefit running directly to someone else where: . . . 2) the debtor and the other person share an identity of economic interests so that the debtor got some or all of the direct benefit straightforwardly even

> though, in form, it passed only to the other person because what benefits one will benefit the other.

EPSTEIN § 6-49 at 28-30 (emphasis in original).

Such was the case here. The legal services had value and were identifiable and tangible. This is not a case where value was intangible, indirect, and non-economic. *See* Dietz, 117 F.3d 1080.[4]

Appellees urge that this result conflicts with the testimony elicited from several witnesses for the Appellants to the effect that the law firm's work was done for the benefit of the UUCC and not for the benefit of the Debtor. This testimony and these admissions, going to an ultimate fact to the decided by the court, were little more than conclusory. It was for the court to decide, given the work performed, what value was received and by whom.

In short, the Trustee did not meet his burden of proof. The payments to Appellants were transfers in exchange for reasonably equivalent value.

ACCORDINGLY, we affirm the bankruptcy court's allowance of leave to amend and reverse the court's finding that Debtor did not receive reasonably equivalent value in exchange for the transfers.

---

[4]Stated differently, in a fraudulent conveyance analysis, the court should focus on the question of what the debtor surrendered and what the debtor received, irrespective of any benefit following to a third party. See Wyle v. C. H. Rider and Family (*In re* United Energy Corp.), 944 F.2d 589, 597 (9th Cir. 1991). Accordingly, if the exchange preserves or enhances the debtor's net worth, then the transfer was not fraudulent even if a third party was the intended beneficiary of the transfer. Rubin v. Manufacturers Hanover Trust Company (*In re* USN Company), 661 F.2d 979, 992 (2d Cir. 1981).

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT