# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 03-6077EA
_____

| | | |
|---|---|---|
| In re: | * | |
| Southern Health Care of Arkansas, Inc. | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| William S. Meeks, Trustee | * | |
| | * | Appeal from the United States |
| Plaintiff - Appellee, | * | Bankruptcy Court for the Eastern |
| | * | District of Arkansas |
| v. | * | |
| | * | |
| Don Howard Charitable Remainder | * | |
| Trust, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 21, 2004
Filed: May 10, 2004

_____

Before SCHERMER, FEDERMAN, and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court[1] holding that Southern Health Care of Arkansas, Inc. ("Debtor") did not receive reasonable equivalent value for payments it made on a mortgage note to the Don Howard Charitable Remainder Trust ("CRT") and that CRT was liable to William S. Meeks, the Chapter 7 trustee, for $121,918.58 in avoidable transfers under 11 U.S.C. § § 548 and 550. For the reasons stated below, we affirm.

## I. STANDARD OF REVIEW

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Findings of fact are reviewed for clear error, and legal conclusions are reviewed *de novo*. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Official Committee of Unsecured Creditors v. Farmland Industries, Inc.*, 296 B.R. 188, 192 (B.A.P. 8th Cir. 2003). Matters committed to the bankruptcy court's discretion will be reversed only if the court has abused its discretion. *C.T. Development Corp. v. Barnes (In re Oxford Development, Ltd.)*, 67 F.3d 683, 685 (8th Cir. 1995); *City of Sioux City, Iowa v. Midland Marina, Inc. (In re Midland Marina, Inc.)*, 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001).

## II. BACKGROUND

Don G. Howard ("Howard"), a physician, owned a one-half interest in a diagnostic medical clinic in Fordyce, Arkansas, as a tenant in common with Hugh A. Nutt ("Nutt"), another doctor. The clinic was located close by the Dallas County Hospital in Fordyce. The doctors owned the real property on which the clinic was

---

[1]    The Honorable Richard D. Taylor, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

situated, as well as all of the furniture, fixtures, and equipment. In a series of transactions in December 1997, Howard transferred ownership of his one-half interest in the clinic property to the Don Howard Revocable Trust. That trust then transferred that same interest to CRT, which in turn transferred that same interest – by way of a warranty deed and bill of sale – to Healthcorp of Tennessee, Inc. ("Healthcorp of Tennessee") for $400,000.00. To effect the purchase, Healthcorp of Tennessee executed a promissory note for $400,000.00 payable to CRT, secured by a deed of trust on the property. Under the terms of the note, Healthcorp of Tennessee was obligated to make monthly payments of $6,537.59 to CRT. Healthcorp of Tennessee then leased its one-half interest in the clinic back to Howard (through his professional corporation), which obligated Howard to pay Healthcorp of Tennessee $2,295.63 per month to continue to operate his medical practice at the clinic.

Healthcorp of Tennessee operated the Dallas County Hospital under a lease with Dallas County, Arkansas. Subsequently, on May 1, 1998, Healthcorp of Tennessee transferred its lease of the hospital to Southern Health Care of Alabama, Inc. ("SHC Alabama"), a nonprofit entity, for a total price of $2,000,000. SHC Alabama then picked up the note payments to CRT on the clinic property. Healthcorp of Tennessee, however, retained all documents of title to the clinic property, and thus remained the record owner of CRT's (and Howard's) former one-half interest in the diagnostic clinic. Despite the transfer of the lease, Healthcorp of Tennessee continued to manage the hospital and pay all bills under a management contract with SHC Alabama. Then, in March 1999, SHC Alabama transferred the hospital lease and the management contract to the Debtor. Healthcorp of Tennessee continued to manage the property, but the Debtor assumed payment of the $6,537.59 monthly mortgage note to CRT, even though it had not received any documents conveying title of the clinic property. Despite the absence of any evidence of ownership, the Debtor claimed yearly depreciation expenses on its tax returns of $13,466.62 for the medical clinic, as if it owned the one-half interest in the clinic.

The bankruptcy court found that Healthcorp of Tennessee never deeded or otherwise transferred its ownership of the clinic assets to either Southern Health Care or the Debtor. It further found that there was no evidence to show any kind of agreement obligating Healthcorp of Tennessee to transfer the clinic property to the Debtor, or to show that the Debtor received any consideration from Healthcorp of Tennessee for undertaking the monthly note payments to CRT.

In the course of these events, Nutt determined to terminate his tenancy in common with Howard in the medical clinic, and he commenced an action in state circuit court for partition of the property. On September 19, 2001 – long after the Debtor had undertaken the $6,537.59 monthly note payments to CRT – Healthcorp of Tennessee admitted in its answer to Nutt's partition action that it was the owner of the clinic property. Nutt prevailed in his partition action, and at the court-ordered sale Nutt was the only bidder and purchased the entire property for $200,000.00. After deducting the costs of sale and his one-half share of the proceeds, Nutt placed $97,638.10 in the state court registry, pending a final ruling as to who was entitled to receive the money.

Based on the Debtor's February 1999 financial statement, the bankruptcy court found that the Debtor was insolvent from its inception and remained insolvent until the filing of its bankruptcy petition October 3, 2002.[2] Thus, the Court found that the payments made to CRT in the three years preceding the bankruptcy filing were made when the Debtor was insolvent.

---

[2] According to the testimony of Richard L. Maxwell, a certified public accountant for the Trustee, the Debtor was insolvent beginning with the month ending on October 31, 2000 through September 2002. The bankruptcy court, however, expressly held that the Debtor was insolvent since February 1999 – based on its financial statement. This finding was not contested on appeal.

## III. DISCUSSION

Section 548 (11 U.S.C. § 548) of the Bankruptcy Code gives a trustee the power to avoid a transfer made by a debtor within one year of the filing of a bankruptcy petition if the debtor receives less than a reasonably equivalent value in exchange for the transfer and if the debtor was insolvent on the date the transfer was made.[3] The language of Ark. Code Ann. § 4-59-204 is substantially the same as § 548 of the Bankruptcy Code. The only substantial difference is that Arkansas provides for a three-year reach back period for undoing fraudulent transfers, Ark. Code Ann. § 2-59-209, whereas the Bankruptcy Code only provides for a one-year reach back period. 11 U.S.C. § 548(a)(1). A trustee in bankruptcy is entitled to use

---

[3]   That section provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

....

    (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
       (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
        (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1)(B).

Arkansas's three-year avoidance period, which the Trustee did in this case. 11 U.S.C. § 544(b).

CRT argues that the bankruptcy court committed error by finding constructive fraud without weighing the equivalency of competing values or adequacy of consideration under 11 U.S.C. § 548(a)(1)(B)(i) and Ark. Code Ann. § 4-59-204(a)(2). More concretely, CRT maintains that the Debtor received adequate consideration for assuming the obligation on the mortgage to CRT because the Debtor received $2,295.63 per month in lease payments, it claimed annual depreciation of $13,466.62 on the clinic and its contents, Howard referred patients to the hospital, and the Debtor had the right to manage the Dallas County Hospital. CRT does not contest that all of the other elements necessary for the Debtor's payments on the mortgage to be a fraudulent transfer under 11 U.S.C. § 548 are present. Thus, the only issue is whether the Debtor received reasonably equivalent value for the payments it made to CRT on the $400,000.00 promissory note.

In the Eighth Circuit, the issue of whether a transfer is made for a reasonably equivalent value is a question of fact reviewed under a clearly erroneous standard. *Jacoway v. Anderson (In re Ozark Restaurant Equipment Co.)*, 850 F.2d 342, 344 (8th Cir. 1988). To succeed on a claim under 11 U.S.C. § 548(a)(1)(B)(i), the Chapter 7 Trustee must demonstrate, by a preponderance of the evidence, that payments a debtor made were not in exchange for reasonable equivalent value. *Pummill v. Greensfelder, Hemker & Gale, P.C. (In re Richards & Conover Steel, Co.)*, 267 B.R. 602, 612 (B.A.P. 8th Cir. 2001). "This requires analysis of whether: (1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was reasonably equivalent to what was received." *Id.* The payment of money is unquestionably the giving of "value." 11 U.S.C. § 548(d)(2)(A). When evaluating a transfer for reasonable equivalency of value as compared to a money payment, a court must examine the whole transaction and measure all the benefits – whether they be direct or indirect. *Christians v. Crystal Evangelical Free Church (In re Young)*,

82 F.3d 1407, 1415 (8th Cir. 1996) (holding that the trustee could not recover tithes to a church under 11 U.S.C. § 548), *vacated*, 521 U.S. 1114, 117 S. Ct. 2502, 138 L. Ed. 2d 1007 (1997) (vacating for further consideration on the legitimacy of the Religious Freedom Restoration Act), *reinstated*, 141 F.3d 854 (8th Cir. 1998), *cert. denied*, 525 U.S. 811, 119 S. Ct. 43, 142 L. Ed. 2d 34 (1998). If the measure for reasonable equivalency is the value of an indirect benefit then that benefit must be tangible. *Richards & Conover Steel, Co.*, 267 B.R. at 612-13. Transfers made by a debtor for the benefit of a third party, by themselves, do not provide any reasonable equivalent benefit for the debtor. *Dietz v. St. Edward's Catholic Church (In re Bargfrede)*, 117 F.3d 1078, 1080 (8th Cir. 1997) (holding that the receipt of an indirect, non-economic, intangible, psychological benefit was not sufficient to constitute reasonable equivalent value).

The difficulty with CRT's arguments – apart from being abstract – is that they are not supported by the evidence adduced in the bankruptcy court.

First, the record does not support CRT's contention that the Debtor received Howard's monthly rental payment of $2,295.63. Richard L. Maxwell, a certified public accountant employed by the Trustee, testified that he examined the Debtor's books and records and he was unable to verify that the Debtor ever received any rental income from Howard. Also, Howard testified that he never issued a rental payment to the Debtor; rather, the address of the purported landlord was always that of Healthcorp of Tennessee. Additionally, Howard eventually began making his rent payments to CRT because the Debtor had stopped making the monthly mortgage payments. Based on the evidence, the bankruptcy court determined that the rent payments were never posted to the Debtor's books and that Howard's rent payments were never applied for the Debtor's benefit. That finding is not clearly erroneous.

Second, the purported goodwill that the Debtor's payment of the clinic mortgage engendered on behalf of Howard, which allegedly would result in more

hospital referrals by Howard, and the economic benefit garnered from the ability to control medical offices and equipment in close proximity to the Dallas County Hospital, were never sufficiently quantified by CRT. There was no evidence that Howard referred patients to the hospital because of or in exchange for the Debtor's mortgage payments. Maxwell, the accountant, acknowledged that the Debtor's books contained a line item for "physician revenues," but Maxwell stated that he did not know what that represented, and no other evidence was adduced by Howard to explain "physician revenues." More importantly, Howard did not demonstrate that his referral of patients was a *quid pro quo* for the Debtor's apparently gratuitous payment of the mortgage payments. Nor is there any evidence in the record to demonstrate that the Debtor's payments to CRT were a condition of its holding the lease for the hospital. In short, the purported benefits are too chimerical in the record to demonstrate a tangible, direct, economic benefit to the Debtor.

Finally, even assuming that the Debtor was legally able to claim a depreciation expense on its taxes for the medical clinic, which it did not own, being able to claim $13,466.62 in annual depreciation is not a reasonably equivalent exchange for paying $78,451.08 a year on a mortgage note, especially when payments on the mortgage note benefitted Healthcorp of Tennessee, not the Debtor, and when the Debtor did not own or use the property.

Accordingly, we affirm the order of the bankruptcy court.

————————————————