**In re Sabrina M. SCHULTZ, Debtor.**

**Patti J. Sullivan, Chapter 7 Trustee for the Estate of Sabrina M. Schultz, Plaintiff,**

**v.**

**Sabrina M. Schultz, and Karen Dove, Trustee of the Sabrina Schultz Irrevocable Special Needs Trust, Defendants.**

**Bankruptcy No. 05–34428.**
**Adversary No. 06–3330.**

United States Bankruptcy Court, D. Minnesota.

May 14, 2007.

## ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the Chapter 7 trustee's complaint seeking to avoid the transfer of an inheritance into a special needs trust as a fraudulent transfer pursuant to 11 U.S.C. § 548, and to recover the transfer from the trustee of the special needs trust pursuant to 11 U.S.C. § 550(a). At the conclusion of the trial, the Court took the matter under advisement. Based upon all of the files, records and proceedings herein, the Court being now fully advised makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. FINDINGS OF FACT

The only question before the Court is one of reasonable equivalent value, for purposes of 11 U.S.C. § 548(a)(1)(B), with respect to the debtor's interest in a cash inheritance transferred to a special needs trust. The facts underlying this issue are essentially not in dispute. Many of the central facts are stipulated. Evidence admitted at trial expanded the scope and introduced further detail, but no material factual claim was meaningfully challenged.

Sabrina Schultz, the debtor, is a disabled adult individual, suffering from "mild" mental retardation. She lives partially independently, in the sense that she is not under constant supervision. She has her own apartment within a facility that provides hourly in-home care in an amount determined by available funding and to some extent by the resident's needs. The in-home care services are mainly instruction in ordinary life skills, including creating and maintaining a budget. Schultz drives, and sometimes pays her own monthly expenses with assistance.

Robert Everhart, Everhart Law Office, New Brighton, MN, for Debtor.

Cynthia L. Hegarty, Best & Flanagan, LLP, Minneapolis, MN, for Plaintiff.

Robert Everhart, Everhart Law Office, New Brighton, MN, for Defendants.

Schultz has an IQ of 65, which is roughly equivalent to the mental ability of a 6 or 7 year old child. She has serious learning problems, including being "impaired to the extent of lacking sufficient understanding or capacity to make or communicate responsible decisions concerning [her] personal needs for medical care, nutrition, clothing, shelter or safety."[1] She has "demonstrated behavioral deficits," and "lacks sufficient financial responsibility." *See* FN 1. Schultz has no understanding of financial matters including the substance and consequences of credit transactions.

Currently, and at all relevant times, Schultz qualifies for Medical Assistance. She is therefore entitled to receive and does receive services under the Minnesota MR/RC Waiver program, and has since 1995.[2] Under the Waiver, the State of Minnesota pays Opal In Home Services to provide Schultz with supervised living assistance. In 2006, Opal received $31,400 for services provided to Schultz under the Waiver. The value of the services approved for 2007 is $33,500. Schultz also receives Waseca County employment/job training services which are dependent upon Schultz maintaining her supervised living services through the Waiver. In 2006, Schultz received employment services valued at approximately $14,000. In other words, the 2006 simple monetary value to Schultz of her Waiver eligibility was at least $45,400.

However, the value of the Waiver services to Schultz was and is greater than $45,400 because the consequences of even momentary Medical Assistance ineligibility are dire. Had Schultz lost her MA eligibility in 2006, she would have lost her Waiver eligibility and her "slot" in the program. The next person on the waiting list, which is in priority of most emergent need, would have immediately filled the vacant slot. Once, re-eligible, Schultz would have been placed back on the waiting list, but the wait would have been for at least three years based on the current list and funded slots.

While Schultz is employed by PROACT at $8 per hour and those Waseca County services are not directly contingent on the Waiver, the PROACT employment is contingent on her continuing to live within their service area. Having lost her Waiver slot and being wait-listed, however, Schultz would no longer be able to maintain her current supervised assisted living program. Neither her wage nor her mental capacity provide the means necessary for independent living. The only alternative would be group residential housing, a limited "eats and sheets" program providing not even one hour per day of staff time, and requiring contribution of all of Schultz's income. In addition, many residential group homes disallow residents from keeping a vehicle. Finally, residential group housing is inadequate for Schultz's training and safety needs. While other counties may have different programs available, an individual must be without services for two months in a new

1. Order Appointing Limited Guardian of the Person of Sabrina Schultz, State of Minnesota, Waseca County District Court, Probate Division, Court File No. P0–04–662, November 22, 2004.

2. In 1981, Congress created the Title XIX Home and Community–Based Services Program, which allowed the federal government to waive rules for spending federal Medicaid funds, and allowed states to apply for waivers to use federal funds to pay for community-based services as an alternative to institutional settings. Minnesota developed its first waiver program in 1984. It was the MR/RC Waiver for persons with mental retardation and related conditions (or developmental disabilities). To be eligible for a state waivered services program, a person must have a disability and qualify for Medical Assistance. *Eligibility is determined, in part, based on an individual's income and assets.*

county in order establish a changed financial residency. Homelessness is a real concern under such circumstances.

In September 2004, Schultz learned that she would inherit funds from her grandmother's estate. The inheritance consisted of $42,388.27. The attorney for her grandmother's estate then disbursed some of the inheritance funds directly to Schultz's creditors as follows: $4,041.11 to Wells Fargo to pay off a Visa credit card account; $12,737.78 to U.S. Bank to pay off a car loan. As a result, Schultz was debt free as of September 21, 2004. The balance of the inheritance was $25,609.38.

The distribution of the inheritance funds by the attorney for the grandmother's estate to Wells Fargo and U.S. Bank to pay debt incurred by Schultz did not adversely affect her eligibility for medical assistance. However, had she received the inheritance directly, she would have lost her eligibility for Medical Assistance, and suffered the consequences as described above. During the same time period, fall 2004, Schultz was the victim of exploitation by the husband of a purported friend. At his request, Schultz went into debt nearly $40,000, opening credit accounts and entering into loans for the purchase of vehicles, computer equipment, cell phones, and jewelry for him.

Rosalie Grams, Schultz's social worker, intervened. On or about November 8, 2004, Grams filed a Petition for Emergency Appointment of a Guardian for Schultz in the Waseca County District Court. On November 22, 2004, the Waseca County District Court entered an Order Appointing Limited Guardian of the Person of Sabrina Schultz. Included in the order is the finding that Schultz lacks the capacity to "approve or withhold approval of any contract, except for necessities." A permanent guardianship application is prepared or underway but cannot proceed until Schultz's financial problems are finally resolved.

With the assistance of Kay Rukavina, Opal's program director, an attorney was contacted to establish a special needs trust fund pursuant to 42 U.S.C. §§ 1396p and 1382b(e)(5) and Minn.Stat. §§ 501B.89 and 524.5–412, in order to hold the inheritance and to allow Schultz to retain her eligibility for Medical Assistance. On December 14, 2004, the Sabrina Schultz Irrevocable Special Needs Trust was established pursuant to an Order Establishing Special Needs Trust entered by the Dakota County District Court. The Trust, dated December 16, 2004, was funded by depositing the balance of the inheritance into two accounts for Schultz's benefit as follows: $20,609.38 was deposited into an interest bearing savings account with Wells Fargo bank; and $5,000 was deposited into a checking account with Wells Fargo bank. As the beneficiary, Schultz has limited access to the trust. She only has access to trust funds at the discretion of the trustee for "special medical care, equipment dental care, personal supervision, companion services, private room changes, counseling and treatment not covered by public funds." The trust is administered by an independent professional fiduciary as trustee.

## II. DISCUSSION

Section 548(a) provides, in pertinent part:

(a)(1) The trustee may avoid any transfer ... of an interest of the debtor in property ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such ob-

ligation was incurred, or became insolvent as a result of such transfer or obligation.

*See* 11 U.S.C. § 548(a)(1)(B).

"To succeed on a claim under 11 U.S.C. § 548(a)(1)(B)(I), the Chapter 7 Trustee must demonstrate, by a preponderance of the evidence, that payments a debtor made were not in exchange for reasonable equivalent value." *See In re Southern Health Care of Arkansas, Inc.,* 309 B.R. 314, 319 (8th Cir. BAP 2004), citing *In re Richards & Conover Steel, Co.,* 267 B.R. 602, 612 (8th Cir. BAP 2001). "This requires analysis of whether: (1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was reasonably equivalent to what was received." *Id.,* see also *In re Rosen Auto Leasing, Inc.,* 346 B.R. 798, 805 (8th Cir.BAP2006), citing *Richards & Conover Steel,* 267 B.R. at 612.

"When evaluating a transfer for reasonable equivalency of value as compared to a money payment, a court must examine the whole transaction and measure all the benefits-whether they be direct or indirect." *Southern Health Care,* 309 B.R. at 319, citing *Christians v. Crystal Evangelical Free Church (In re Young),* 82 F.3d 1407, 1415 (8th Cir.1996) (holding that the trustee could not recover tithes to a church under 11 U.S.C. § 548), vacated, 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997) (vacating for further consideration on the legitimacy of the Religious Freedom Restoration Act), reinstated, 141 F.3d 854 (8th Cir.1998), cert. denied, 525 U.S. 811, 119 S.Ct. 43, 142 L.Ed.2d 34 (1998). "If the measure for reasonable equivalency is the value of an indirect benefit then that benefit must be tangible." *Southern Health Care,* 309 B.R. at 319, citing *Richards & Conover Steel,* 267 B.R.

at 612–13. See also *Dietz v. St. Edward's Catholic Church (In re Bargfrede),* 117 F.3d 1078, 1080 (8th Cir.1997) (receipt of an indirect, non-economic, intangible, psychological benefit was not sufficient to constitute reasonable equivalent value).

"There is no bright line rule used to determine when reasonably equivalent value is given." *See In re Lindell,* 334 B.R. 249, 255–256 (Bankr.D.Minn.2005), citing In re *Ozark Restaurant Equipment Co., Inc.,* 850 F.2d 342, 345 (8th Cir.1988) (determination of reasonably equivalent value is based on a "totality of the circumstances"); *Barber v. Golden Seed Co.,* 129 F.3d 382, 387 (7th Cir.1997) (standard for reasonable equivalence should depend on all the facts of each case). "A determination of reasonably equivalent value is 'fundamentally one of common sense, measured against market reality.'" *Lindell,* 334 B.R. at 256, citing *In re Northgate Computer Sys., Inc.,* 240 B.R. 328 (Bankr. D.Minn.1999). "When evaluating a transfer for reasonable equivalency under 11 U.S.C. § 548(a)(1)(B)(I) a court must examine the entire situation." *Lindell,* 334 B.R. at 255, citing *Ozark Restaurant,* 850 F.2d at 344–345.

In the case presently before the Court, the trustee argues that the transfer of Schultz's inheritance funds into a special needs trust did not constitute an exchange of reasonably equivalent value and that therefore the transfer constitutes an avoidable fraudulent conveyance. The facts of this case patently lead to the opposite conclusion. Schultz ensured continuing essential services of a value of more than $45,000 in exchange for the transfer of (and irrevocable release of control over) $25,609.38 into a special needs trust, and also protected those funds to be used for very particular necessary expenses she could not otherwise fund.[3]

---

**3.** The funds in the special needs trust may be  used to cover expenses for such things as

The trustee notes that Schultz's ineligibility for Medical Assistance, had she taken the inheritance directly, would have been for just the month in which she received the funds. That characterization may be technically correct, but it is wholly inaccurate with respect to the essential and valuable Waiver benefits and related services that are derived from Medical Assistance eligibility. Losing eligibility for Medical Assistance and the Waiver would have eliminated Schultz's supervised living assistance and housing for an indefinite period of time, at least for three years, and seriously jeopardized if not also terminated her employment services.

When faced with the inheritance, the social worker had essentially three choices to advise on behalf of Schultz: pay the funds back to the Medical Assistance program, go off Medical Assistance, or establish a special needs trust in favor of Schultz and fund it with the inheritance. Obviously the social worker made the best choice for Schultz—not only in terms of avoiding a total and indefinite loss of essential Waiver and related benefits, but also by safeguarding the inherited funds for additional expenses otherwise not covered by any available resources or programs.

The main benefit and value of transferring the inheritance into the special needs trust, however, was to preserve Waiver eligibility. Loss of eligibility would have meant, at best, Schultz trading approximately $50,000 in essential and mostly adequate services in exchange for less than $10,000 of totally inadequate services. Worse still is the real possibility of Schultz

ending up a "street person." The social worker acted in Schultz's best interest in seeking the guardianship to cease Schultz's exploitation by third parties and to gain control over her collapsing financial situation. Establishing the special needs trust was likewise an act of substantial value to Schultz by preserving services essential to her safety and well being.

The trustee argues that the inheritance could have been paid out entirely to Schultz's creditors, as was done before the trust was created, with no consequences to Schultz's Medical Assistance and Waiver benefits eligibility. While this is true, it is not relevant. While it would have been a valid course of action, it did not so occur. While payment of antecedent debts would have constituted an exchange of reasonably equivalent value, the course of action actually taken by transferring the inherited funds into a special needs trust also constituted an exchange of reasonably equivalent value.

The remainder of the trustee's arguments are without merit. The legitimacy of a spendthrift clause in a grantor trust is not a pertinent inquiry in the case of this special needs trust under Minn.Stat. § 501B, established by the state court and not by Schultz herself, on petition made on by a third party on behalf of Schultz. And, public policy supports enforcement of special needs trusts for obvious reasons quite apparent in the circumstances of this case. The grantor and beneficiary of the special needs trust in this case are not the same party,[4] and Schultz gave up her exclusive and unfettered control of the inher-

---

disability adaptive clothing or medical equipment, furnishings, non-covered surgery, or other special necessities not covered by Medical Assistance and eligibility based programs. "The Trustee shall make distributions only to supplement and not to supplant such public assistance available for maintenance, health care or other benefits."

4. Moreover, the state court in the order establishing the trust specifically held that Schultz "cannot establish a Special Needs Trust for herself," so she can hardly be considered the grantor for purposes of the § 548(a)(1)(B) determination.

itance funds to the limited discretion of a trustee in exchange for the reasonably equivalent value of maintaining Medical Assistance and Waiver eligibility, including the uninterrupted provision of essential Waiver derived benefits and services.

Finally, the trustee's demand that Schultz's claimed exemption in the trust be limited to the claimed amount of $0.00 is a moot concern because the transfer is not avoidable, was arguably not voluntary, and the trust is enforceable under applicable nonbankruptcy law and as such is accordingly not property of the estate. See 11 U.S.C. §§ 522(g), 541(a)(1), 541(c)(2).[5]

## III. DISPOSITION

IT IS HEREBY ORDERED:

1. The transfer of inherited funds into the Sabrina Schultz Irrevocable Special Needs Trust constituted an exchange for reasonably equivalent value pursuant to § 548(a)(1)(B)(i) and is therefore not avoidable.

LET JUDGMENT BE ENTERED ACCORDINGLY.

**5.** Section 541(c)(1) provides, in relevant part: Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law. *Subsection (2) provides: A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.*