**In the Matter of Warren F. HUFF, Debtor.**

**Ernest V. HARRIS, Trustee, Plaintiff,**

**v.**

**Warren F. HUFF and Warren F. Huff, as Executor of the Estate of Sallie F. Huff, Defendants.**

**Bankruptcy No. 91–30369.
Adv. No. 91–3041.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

July 16, 1993.

Ernest V. Harris, Athens, GA, for plaintiff.

Sara M. McArthur and John Jay McArthur, Athens, GA, for defendants.

### STATEMENT OF THE CASE

ROBERT F. HERSHNER, Jr., Chief Judge.

Warren F. Huff, Debtor, filed a petition under Chapter 7 of the Bankruptcy Code on March 21, 1991. Ernest V. Harris, Chapter 7 Trustee, Plaintiff, filed a "Complaint to Set Aside Fraudulent Conveyance" on September 25, 1991. Sallie F. Huff and Warren F. Huff, Defendants, filed their answer on October 28, 1991. Plaintiff filed an amendment to his complaint on August 4, 1992. Defendants filed their answer to the amended complaint on September 28, 1992. A trial was held on April 6, 1993. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

The Court will refer to Warren F. Huff as Debtor and to Sallie Huff as Mrs. Huff. Mrs. Huff was Debtor's mother. Mrs. Huff died during the pendency of this adversary proceeding. Debtor, as Executor of the Estate of Sallie F. Huff, has been substituted as a party defendant in this adversary proceeding.

### FINDINGS OF FACT

Debtor owned a motel in Waycross, Georgia, which he leased to the Georgia Department of Corrections. Debtor received rent of $36,000 per year. In September of 1981, Debtor moved from Waycross to Athens to live with his mother. Debtor lived in his mother's residence until 1986. He was unemployed during this time. He continued to lease the Waycross motel to the Department of Corrections.

In February of 1986, Debtor purchased a residence on Kings Road in Athens from Mr. Sams. The purchase price was $94,000. Debtor made a small down payment and obtained a loan in the amount of $46,000 from Athens Federal Savings Bank. Debtor gave Athens Federal a first lien on the residence. Mr. Sams financed the balance of the purchase price and received a second lien. Mrs. Huff moved into the residence in June of 1986. She continued to live in the residence during the period relevant to the Court's decision.

In April of 1986, Debtor purchased a business in Athens known as Thompson Furniture Company. The seller was the Thompson Estate and the purchase price was $200,000. Debtor purchased the inventory of the furniture business but did not purchase the real estate. Citizens & Southern National Bank ("C & S Bank") extended a loan to Debtor in the amount of $225,000 and received a first lien on the Waycross motel and on the inventory of the furniture business. The loan was to be repaid in five annual payments, with a balloon payment at the end.

A surprise party was given for Mrs. Huff on July 19, 1987, her seventy-fifth birthday. Debtor testified that he called his mother aside and told her that everything in the residence was hers. He testified that the residence was decorated for a "woman's taste." This gift was not reduced to writing and none of the 140 guests were present when Debtor made the gift. Debtor continued to list the furniture on his personal financial statements after July of 1987. Debtor listed the furniture as having a value of $136,000 to $140,000. Debtor's last financial statement was published on May 14, 1990. Debtor testified that when a creditor

requested a financial statement, he simply copied a prior statement.

In early 1988, Debtor received a "cancelled" deed to secure debt from the C & S Bank. This released the C & S Bank's lien on the Waycross motel. In February of 1988, the Bank of Georgia extended a loan to Debtor in the amount of $100,000 and took a first lien on the Waycross motel. Debtor used $75,000 of the loan proceeds to purchase inventory for his furniture business. Debtor used the remaining $25,000 as partial payment to purchase the real estate on which he operated his furniture business. The Thompson Estate financed the balance.

Calvin Stansell was the loan officer at C & S Bank who handled Debtor's account. Mr. Stansell learned that Debtor had given the Bank of Georgia a lien on the Waycross motel. Mr. Stansell also discovered that the C & S Bank had mistakenly cancelled its lien. At Mr. Stansell's request, Debtor executed a new deed to secure debt in August of 1988. Thus, the Bank of Georgia held a first lien on the Waycross motel, and C & S Bank held a second lien.

Debtor executed a promissory note dated August 2, 1988, in favor of C & S Bank. Debtor agreed to pay the principal and interest of $223,251.14 on August 2, 1989.

In August or September of 1989, Debtor used his annual rent check on the Waycross motel to pay off the second lien on the residence. Debtor failed to make his loan payment to C & S Bank, which was due on August 2, 1989. Debtor had a number of meetings with Mr. Stansell and Patrick Allen, the president of the Athens branch office for C & S Bank. Debtor refused to give C & S Bank a lien on the residence. Debtor understood that Mr. Allen "wanted to get his residence." C & S Bank declared Debtor's promissory note in default and filed suit to collect the debt.

Debtor's furniture business was not successful. During the latter part of November of 1989, Debtor sold the remaining inventory and closed his furniture business.

Between November of 1971 and November 8, 1988, Mrs. Huff issued twenty-two checks payable to Debtor. The total amount of the checks was $118,215.74. Debtor used these funds to support his Waycross motel and his furniture business. Debtor contends the checks represent loans from his mother. The loans were not reduced to writing, no interest was to be paid, and there was no understanding as to when the loans were to be repaid. Debtor issued two checks to his mother, which totalled $47,000. Debtor contends that the $47,000 represents loan repayments and that on December 1, 1989, he was indebted to his mother in the amount of $71,215.74.

Debtor was concerned that the C & S Bank would "get his residence." Debtor sought the advice of three attorneys concerning conveying the residence to his mother. He was told that creditors could attack the conveyance. Debtor understood that he could sell the residence for market value or valuable consideration. Debtor was advised that good consideration included a cancellation of debt. Debtor's mother agreed to accept the residence in satisfaction of the $71,215.74 debt that Debtor owed her.

Debtor executed a warranty deed dated December 1, 1989, in favor of his mother. The property conveyed was the residence. The deed shows the consideration as $68,-900.[1] The deed states that the conveyance was subject to the first lien held by Athens Federal, which Mrs. Huff agreed to assume. Debtor was not released from the obligation to Athens Federal. The balance owed to Athens Federal was $46,000. Thus, the total consideration for the conveyance was $114,-900. Debtor testified that the residence was worth $125,000. Mrs. Huff did not sign any document evidencing that the debt owed her by Debtor was paid.

Mr. Stansell and Mr. Allen learned of this conveyance. Debtor told them it was a bona fide transaction. They decided, on behalf of C & S Bank, not to contest the conveyance.

---

1. See O.C.G.A. § 48–6–1 (1991). The face of the warranty deed shows that real estate transfer tax of $68.90 was paid.

Debtor continued to talk with Mr. Stansell and Mr. Allen about his delinquent loan. Around the first of December of 1989, he offered to give C & S Bank a second lien on his furniture business' real estate. In return, he wanted an extension of time to pay the debt he owed C & S Bank. Mr. Allen refused Debtor's offer. Debtor sold the real estate ten days later and netted $118,000.

Debtor reached an agreement with C & S Bank concerning his delinquent loan. Debtor and Mr. Stansell executed an agreement dated December 29, 1989. It is undisputed that Mr. Stansell had authority to bind the C & S Bank. Debtor prepared the handwritten agreement. The agreement provides:

Agreement Between The Citizens & Southern National Bank and Warren F. Huff

December 29, 1989

The Citizens & Southern National Bank agrees to the following:

1. To Drop the lawsuit pending against Warren Huff in reference to note # 80341.

2. To Cancel the 15% attorney's fee which was added under said suit to the note.

3. To Not challenge, present or future, the sale of his 415 King's Road property.

4. To Clear Warren Huff's credit record wherever affected by said suit.

5. To Renew the note for 12 months from the August 2, 1989, due date.

Warren F. Huff agrees to the following:

1. To Pay the interest due on note 80341 which was due August 2, 1989, of $28,749.79.

2. To Reduce the principal by $10,000.00.

3. To Pay the Bank of Georgia interest at next due date.

4. To Pay actual attorney cost of $1,078.00.

5. To Put Waycross Diversion Center property on Market for sale 90 days by Warren Huff; then list with Realtor.

Debtor's check register was admitted into evidence. It shows that Debtor issued three checks to C & S Bank on December 28, 1989. These checks represent Debtor's performance of items one, two, and four of the agreement.

Pursuant to item five of the agreement, Debtor signed a real estate listing agreement dated March 24, 1990, offering to sell the Waycross motel for $450,000. The Department of Corrections decided to renegotiate the lease, and Debtor did not sell the motel. Under item three of the agreement, C & S Bank wanted Debtor to pay interest on his loan with Bank of Georgia because C & S Bank held a second lien on the Waycross motel. The C & S Bank was concerned that the Bank of Georgia would foreclose and "wipe out" the second lien held by C & S Bank.

Mrs. Huff published a personal financial statement dated January 8, 1991, on which she listed, as an asset, furniture worth $135,000. This financial statement was prepared by Debtor and signed by Mrs. Huff.

Debtor moved out of the Kings Road residence in October of 1990. Debtor continued to pay the mortgage, utility bills, and real estate taxes after he conveyed the residence to Mrs. Huff. He paid these expenses until January of 1991. He testified that he paid these expenses as "his rent" and because he still owed $3,000 to his mother.

On January 28, 1991, Mrs. Huff signed a "Certificate of Assumption," agreeing to assume and pay the debt on the residence owed to Athens Federal. The certificate provided that Debtor was not released from his obligations under the promissory note or deed to secure debt.

Debtor failed to make his payment to C & S Bank. The bank foreclosed on the Waycross motel in January of 1991. C & S Bank paid off the first lien held by the Bank of Georgia. C & S Bank continues to own the motel and is offering it for sale for $130,000.

Debtor owed credit card debts to C & S Bank. The deed to secure debt on the Waycross motel contained a "dragnet clause."

Debtor filed a petition under Chapter 7 of the Bankruptcy Code on March 21, 1991.

## CONCLUSIONS OF LAW

Plaintiff seeks to avoid Debtor's transfer of household furniture to his mother under section 548(a) of the Bankruptcy Code,[2] which provides:

### § 548. Fraudulent transfers and obligations

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C.A. § 548(a) (West 1993).

■ Plaintiff bears the burden of proving all facts necessary to prove that a fraudulent conveyance occurred. *Rinehart v. Meek (In re Grady)*, 128 B.R. 462, 464 (Bankr.E.D.Wis. 1991); *Ruff v. Vurchio (In re Vurchio)*, 107 B.R. 363, 364 (Bankr.M.D.Fla.1989).

■ The Court is not persuaded that Debtor transferred his furniture to his mother on or within one year of filing his bankruptcy petition. Debtor testified that he made a gift to his mother in July of 1987. The gift was made on her seventy-fifth birthday. Debtor listed the furniture on his personal financial statements published subsequent to July of 1987. Mrs. Huff listed the furniture on her financial statement dated January 8, 1991. The Court is not persuaded that these financial statements are sufficient to show that the gift occurred within one year of the bankruptcy filing. From the evidence presented, the Court can only conclude that Debtor made a gift to his mother of the furniture in July of 1987. Thus, Plaintiff has not carried his burden of proof on this issue.

Plaintiff also seeks to avoid the conveyance of the residence to Mrs. Huff. Plaintiff relies upon section 544(b) of the Bankruptcy Code,[3] which provides:

### § 544. Trustee as lien creditor and as successor to certain creditors and purchasers

. . . .

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C.A. § 544(b) (West 1993).

The applicable law referred to in section 544(b) includes Georgia Code section 18-2-22, which provides:

### § 18-2-22. Conveyances by debtors deemed fraudulent.

The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void:

(1) Every assignment or transfer by a debtor, insolvent at the time, of real or personal property or choses in action of any description to any person, either in trust or for the benefit of or on behalf of creditors, where any trust or benefit is reserved to the assignor or any person for him;

---

**2.** 11 U.S.C.A. § 548(a) (West 1993).

**3.** 11 U.S.C.A. § 544(b) (West 1993).

(2) Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description had or made with intention to delay or defraud creditors, where such intention is known to the taking party; a bona fide transaction on a valuable consideration, where the taking party is without notice or ground for reasonable suspicion of said intent of the debtor, shall be valid; and

(3) Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance.

O.C.G.A. § 18–2–22 (1991).

■ Section 544(b) gives Plaintiff the rights of actual unsecured creditors under state law. A transaction that is voidable by a single, actual unsecured creditor may be avoided in its entirety, regardless of the size of the creditor's claim. *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931).

■ The evidence shows that Debtor had two creditors; namely, the Bank of Georgia and C & S Bank. The Bank of Georgia's claim was fully secured by the Waycross motel. The claim of C & S Bank was not fully secured, but the bank had agreed not to contest Debtor's conveyance to his mother. Plaintiff admits that he stands in the shoes of the unsecured creditor. The Court notes the following language from *Collier on Bankruptcy:*

**[2]—Estoppel; Statutes of Limitations.**

Since the trustee, under section 544(b), will often be compelled to stand on the rights of a single qualified creditor, it is to be expected that the questions of estoppel and the effect of the running of statutes of limitations will arise. The general rule is that section 544(b) confers upon the trustee no greater rights of avoidance than the creditor himself would have if he were asserting invalidity on his own behalf. Consequently, if the creditor is deemed estopped to recover upon his claim, or is barred from recovery because of the running of a statute of limitations *prior to the commencement of the case,* the trustee is likewise rendered impotent. . . .

Thus an election by the creditor prior to commencement of the case to treat the transfer as valid, or an admission in a proceeding prior to commencement of the case with respect to the validity of an obligation, have been held to estop the creditor and in turn the trustee claiming in his stead from asserting any rights under the predecessor of section 544(b).

4 *Collier on Bankruptcy* ¶ 544.03[2] (15th ed. 1992) (emphasis in original).

The Court is persuaded that the C & S Bank, and thus Plaintiff, are estopped from challenging the conveyance because of the December 29, 1989, agreement.

An order in accordance with this memorandum opinion will be entered this date.