**In the Matter of James Robert LARY, Debtor.**

**Joy R. Webster, Trustee, Plaintiff,**

**v.**

**Betty L. Cape and J. Coleman Tidwell, Trustee, Defendants.**

**Bankruptcy No. 04–54138 RFH.**
**Adversary No. 04–5181.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Feb. 10, 2006.

See also 331 B.R. 493.

Robert M. Matson, Macon, GA, for Plaintiff.

Robert P. Westin, Gordon, GA, for Betty L. Cape.

Ed S. Sell, III, Macon, GA, for J. Coleman Tidwell, Trustee.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Chief Judge.

Joy R. Webster, Trustee, filed on December 23, 2004, a Complaint To Avoid Fraudulent Transfer And For Return Of Property Or Its Value. Betty L. Cape,

Defendant, filed a response on January 5, 2005. J. Coleman Tidwell, Trustee, ("Mr. Tidwell"), filed on January 7, 2005, a response to Plaintiff's complaint and asserted a cross-claim against Defendant.[1] Defendant filed on May 20, 2005, a response to the cross-claim. Mr. Tidwell filed on August 17, 2005, an amended response to Plaintiff's complaint and an amended cross-claim. Defendant filed on September 6, 2005, a response to the amended cross-claim. This adversary proceeding came on for trial on September 21, 2005. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

### FINDINGS OF FACT

James Robert Lary, Debtor, is Defendant's brother. Debtor is known as "Jimbo" and as James Robert Lary, III. Defendant is known as "Betsy." Betty S. Lary, ("Mrs. Lary"), was the mother of Debtor and Defendant.

Mrs. Lary died on February 12, 2003. Her Last Will and Testament was probated in solemn form. On March 31, 2003, the probate court appointed Debtor to be the executor of Mrs. Lary's estate. Debtor administered the estate without the assistance of counsel. The primary assets of the estate were a residence (the "Newberg residence")[2] and a retirement account in the amount of $80,504.55.

Section II(1) of Mrs. Lary's Will provided:

II. **BEQUESTS:**

I direct that after payment of all my just debts, my property be bequeathed in the following manner:

1. To whome [sic] that it may concern, at the time of my death, if my son, James Robert Lary III, aka Jimbo, is living at 1220 Newberg Ave and since this is his home now, he can live there *as long as he wants*. Then if he should move it can be sold and divided two ways between both my son James Robert Lary III, aka Jimbo and Betty Louise Cape, aka Betsy. I love you with all my heart. God bless each of you! Mother. (emphasis original)

The Will made bequests of specific personal property to several members of Mrs. Lary's family. Section II(4)(I) of the Will provided that Debtor and Defendant "shall divide whats left."

### *The Newberg Residence*

Debtor was living in the Newberg residence when Mrs. Lary died. Debtor continued to live in the Newberg residence. Debtor and Defendant testified that they believed that, under the terms of the Will, Debtor was the sole owner of the Newberg residence. In June 2003, Debtor married and moved to Gray, Georgia. The Newberg residence was vacant until January 2004.

Defendant filed a petition under Chapter 7 of the Bankruptcy Code on June 24, 2003.[3] Mr. Tidwell was the duly appointed Chapter 7 trustee of Defendant's bankruptcy estate. Defendant did not list the Newberg residence in her bankruptcy schedules. Defendant testified that she did not believe that she owned any interest in the Newberg residence. Defendant received a discharge in bankruptcy and her case was closed on September 30, 2003. Defendant's bankruptcy case was reopened

---

1. Although Plaintiff's complaint also names Mr. Tidwell as a defendant, the real defendant is Betty L. Cape.

2. The Newberg residence is located at 1220 Newberg Avenue, Macon, Georgia.

3. *In re Cape*, Ch. 7, Case No. 03–52795 (Bank. M.D.Ga., June 24, 2003).

on March 26, 2004. Mr. Tidwell was reappointed to be the Chapter 7 trustee.

During 2003, Defendant rented a residence on Wimpy Road, Macon, Georgia. Defendant wanted to move. In December 2003, Defendant applied for a loan to purchase a mobile home. Defendant's loan application was not approved.

Debtor learned that Defendant's loan application had not been approved. Debtor asked Defendant if she wanted the Newberg residence. Debtor and Defendant testified that the judge of the probate court told them how title to the Newberg residence should be transferred from Mrs. Lary's estate to Defendant. Debtor testified that an attorney prepared the deeds after reviewing Mrs. Lary's Will. Debtor executed an executor's deed dated December 28, 2003, conveying the Newberg residence to himself and to Defendant. Debtor also executed a quit claim deed dated December 28, 2003, conveying his interest in the Newberg residence to Defendant. Debtor received no consideration from Defendant. The executor's deed and the quit claim deed were filed for record on January 13, 2004.[4]

Defendant moved into the Newberg residence in January 2004. She continues to live there.

Debtor testified that he had no opinion as to the value of the Newberg residence. There was no mortgage on the Newberg residence when Mrs. Lary died. Debtor filed on November 2, 2003, an Inventory with the probate court listing the value of the Newberg residence as $60,000. (Exhibit Tidwell –1, Book 39, Page 217). The 2005 ad valorem tax statement showed the "100% value" of the Newberg residence to be $62,000.00. (Exhibit P—46). The Court is persuaded that the value of the residence in January 2004 was $60,000.

### The Retirement Account

Mrs. Lary owned a retirement account at the time of her death. Southern Farm Bureau Life Insurance Company issued a check dated April 21, 2003, for $80,504.55. The check was payable to "James R Lary III, Executor For The Estate of Betty S Lary." (Exhibit P—5). Debtor deposited the check into his personal checking account on April 29, 2003. (Exhibit P—6). On April 30, 2003, Debtor issued a check on his personal checking account for $35,013.46, payable to "cash". The check stated that it was "For Betsy's Inheritance." Debtor endorsed the back of the check. (Exhibit P—7). Debtor testified that he cashed the check and kept the proceeds at his residence. Debtor and Defendant testified that Defendant did not receive any of the proceeds and that Defendant knew nothing about the retirement account.

Debtor and his wife separated in June 2004. Debtor testified that he was able to pay his obligations as they became due until his wife moved from the marital residence. Debtor testified that no creditor was threatening to sue him. Debtor testified that, prior to the separation, his annual income was about $32,000. Debtor testified that, prior to the separation, the combined annual income of he and his wife was $57,729. Debtor and his wife later divorced. Debtor continues to live in the former marital residence in Gray, Georgia.

In July 2004, Debtor filed a list of Expenditures of the estate totaling $55,840.27. (Exhibits Tidwell–1, Book 40,

---

4. Mrs. Lary's Will provided that the Newberg residence could be sold and the proceeds divided between Debtor and Defendant. Debtor and Defendant elected to take the Newberg residence itself rather than the proceeds realized from its sale. *Swann v. Garrett*, 71 Ga. 566, 1883 WL 2741 (1883). *See also Bradley v. Bradley*, 225 Ga.App. 530, 484 S.E.2d 280, 283 (1997).

Pages 84—87; P–42). Debtor testified that the remainder of Mrs. Lary's estate, $52,437.27, had been put into Debtor's checking account. Debtor testified that the $52,437.27 was no longer in his checking account as of March 2, 2004.

The probate court entered an order on July 27, 2004, discharging Debtor as the executor of Mrs. Lary's estate. Debtor represented that he had fully administered Mrs. Lary's estate. (Exhibit Tidwell–1, Book 40, Page 101).

Debtor filed a petition under Chapter 7 of the Bankruptcy Code on September 13, 2004. Plaintiff is the duly appointed Chapter 7 trustee of Debtor's bankruptcy estate. Debtor did not list the transfer of his interest in the Newberg residence in his bankruptcy schedules.

The primary factual issue in dispute is whether Debtor was insolvent or became insolvent, when he transferred his interest in the Newberg residence to Defendant on January 13, 2004.[5] The Court is persuaded from the evidence presented at trial that Debtor's assets and liabilities on January 13, 2004, were as follows:

### ASSETS

| Exhibit No. | Item | Value Prior to Transfer | Value Immediately After Transfer |
|---|---|---|---|
| | Cash | $ 10,000.00 [6] | $10,000.00 |
| P–17 | Checking Account | $ 626.81 | $ 626.81 |
| P–30 | Savings Account | $ 1,002.44 | $ 1,002.44 |
| | 2003 Ford Expedition | $ 24,000.00 | $24,000.00 |
| | Residence in Gray, GA | $ 57,772.00 | $57,772.00 |
| | Household Goods | $ 2,000.00 | $ 2,000.00 |
| P–46 | Newberg Residence | $ 30,000.00 [7] | $ 0 |
| | TOTAL TO DEFENDANT | $125,401.25 | $95,401.25 |

### LIABILITIES

| Exhibit No. | Obligations | Amount |
|---|---|---|
| P–32 | 2003 Ford Expedition | $ 29,123.37 |
| P–34 | Mortgage on Residence in Gray, GA | $ 68,773.01 |
| P–35 | Capital One MasterCard | $ 1,965.44 |
| P–36 | Providian Visa Gold | $ 972.27 |
| P–37 | Child Orthodontics [8] | $ 2,587.50 |
| P–38 | Attorney Bill | $ 3,173.93 |
| P–39 | Household Bank MasterCard | $ 286.11 |
| P–40 | Household Bank MasterCard Gold | $ 287.34 |
| P–41 | Citi Card | $ 813.35 |
| | TOTAL | $107,982.32 |

5. The quit claim deed transferring Debtor's interest was filed for record on January 13, 2004. See 11 U.S.C.A. § 548(d)(1) (West 2004) (transfer is made when transfer is so perfected that bona fide purchaser cannot acquire an interest superior to interest of transferee).

6. Debtor testified that he had some $10,000 to $20,000 in cash at his residence.

7. The value of the Newberg residence was $60,000. Debtor and Defendant each owned a one-half undivided interest after Debtor moved from the Newberg residence.

8. Debtor testified that his former wife is paying this obligation. Debtor's signature, however, appears as the sole responsible party on the agreement for the orthodontic services.

## CONCLUSION OF LAW

Plaintiff filed this adversary proceeding to avoid as a fraudulent transfer Debtor's transfer of his interest in the Newberg residence. Plaintiff contends that Debtor's bankruptcy estate is entitled to a one-half undivided interest in the Newberg residence. Mr. Tidwell contends that Defendant's bankruptcy estate is entitled to the other one-half undivided interest in the Newberg residence.

### Defendant's Interest in the Newberg Residence

Mrs. Lary died on February 12, 2003. Her Will provided in part that if Debtor moved from the Newberg residence "it can be sold and divided two ways." Debtor moved from the Newberg residence in June 2003. Debtor executed an executor's deed dated December 28, 2003, conveying the Newberg residence to himself and to Defendant.

◼ "In the testamentary disposition of realty, 'upon the death of the owner of realty ..., the devisees have an inchoate title in the realty which is perfected when the executor assents to the devises. Code § 113–801. [Cits.]' This interest of a devisee is an assignable property right. It can be the subject of a voluntary conveyance." *Williams v. Williams,* 236 Ga. 133, 223 S.E.2d 109, 110 (1976).

◼ Under Georgia law, an executor holds title to all property of a deceased's estate for the payment of debts and for other purposes of administration. Title to property does not pass to the heirs or beneficiaries until the executor assents to the distribution of the property. O.C.G.A. § 53–8–15(a) (1997).

◼ Upon the executor's assent, the devisee's title to the realty relates back to the date of the deceased death. *Bradley*

*v. Bradley,* 225 Ga.App. 530, 484 S.E.2d 280, 283 (1997) *cert. denied.*

◼ Defendant filed for bankruptcy relief on June 24, 2003. Defendant's bankruptcy estate included "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 2004). Defendant's inchoate title to the residence was property of her bankruptcy estate. Upon the executor's assent, Defendant's title related back to February 12, 2003, the date of Mrs. Lary's death. The Court is persuaded that Defendant must surrender to Mr. Tidwell the one-half interest in the Newberg residence that Defendant acquired through Mrs. Lary's Will. 11 U.S.C.A. § 521(4) (West 2004) (debtor must surrender to trustee all property of the estate).

### Fraudulent Transfer of Debtor's Interest

Plaintiff is the Chapter 7 trustee of Debtor's bankruptcy estate. Debtor executed and filed for record a quit claim deed transferring his one-half interest in the Newberg residence to Defendant. Plaintiff seeks to avoid this transfer as a fraudulent transfer. The transfer, if avoided, would be recovered from the transferee, Defendant. 11 U.S.C.A. § 550(a)(1) (West 2004). Plaintiff relies upon section 548(a)(1)(B) of the Bankruptcy Code which provides in part:

§ 548  **Fraudulent transfers and obligations**

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . .

**(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

**(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C.A. § 548(a)(1)(B)(i), (ii)(I) (West 2004)

■ Plaintiff has the burden of proving all facts necessary to prove that a fraudulent transfer occurred. *Harris v. Huff (In re Huff),* 160 B.R. 256, 260 (Bankr. M.D.Ga., 1993). Defendant concedes that the transfer was made within one year before Debtor filed for Chapter 7 relief. Defendant concedes that Debtor received less than a reasonably equivalent value.

Plaintiff and Defendant dispute whether Debtor was insolvent[9] at the time of the transfer or became insolvent as a result of the transfer.

■ "The Bankruptcy Code definition of insolvency is essentially a balance sheet test in which the sum of the debts is greater than the sum of the assets, at a fair valuation, exclusive of property transferred with actual fraudulent intent, and property that may be exempted from the bankruptcy estate." 5 *Collier on Bankruptcy,* ¶ 548.05[1][a] (15th ed. rev.2005).

Debtor and his wife separated about six months after Debtor transferred his interest in the Newberg residence to Defendant. Debtor testified that he was able to pay his obligations as they became due until his wife moved from the marital residence.

■ "The test for 'insolvency' under [the Bankruptcy Code] is not the inability to meet current obligations but is the state of having liabilities exceed assets." *Farmers Bank of Clinton, Missouri v. Julian,* 383 F.2d 314, 326 (8th Cir.), *cert. denied* 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967). *See Durso Supermarkets, Inc. v. D'Urso (In re Durso Supermarkets, Inc.),* 193 B.R. 682, 701 (Bankr.S.D.N.Y.1996).

■ Turning to the case at bar, on the date of the transfer, Debtor's assets totaled $125,401.25. Immediately after the transfer, his assets totaled $95,401.25. Debtor's liabilities totaled $107,982.32. The Court is persuaded that Debtor became insolvent as a result of the transfer. The Court is persuaded that Plaintiff can avoid the transfer under section 548(a)(1)(B) of the Bankruptcy Code. The Court is persuaded that Plaintiff can recover from Defendant a one-half undivided interest in the Newberg residence.

An order in accordance with this memorandum opinion shall be entered this date.

---

9. Section 101(32)(A) of the Bankruptcy Code defines insolvency as follows:

(32) "insolvent" means—

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors, and

(ii) property that may be exempted from property of the estate under section 522 of this title;

11 U.S.C.A. § 101(32)(A) (West 2004).