In re Albert KNIGHT, Debtor.

Theo D. Mann, Chapter 7
Trustee, Plaintiff,

v.

Betty A. Brown, Defendant.

Bankruptcy No. 08–13767–WHD.
Adversary No. 10–01074.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

May 4, 2012.

848

Theo D. Mann, Mann & Wooldridge, P.C., Newnan, GA, for Plaintiff.

George M. Geeslin, James C. Morton, Atlanta, GA, for Defendant.

## ORDER

W.H. DRAKE, Bankruptcy Judge.

Before the Court is the Complaint for Avoidance of Fraudulent Transfer and Recovery of Property, filed by the chapter 7 trustee, Theo D. Mann (hereinafter the "Plaintiff"), against Betty Brown (hereinafter the "Defendant"). This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 157(b)(2)(H), 1334.

### FACTS AND PROCEDURAL HISTORY

Albert Knight (hereinafter the "Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code, and the Plaintiff was appointed trustee. The Plaintiff filed a complaint seeking the avoidance and recovery of the allegedly fraudulent transfer of Debtor's one-half interest in his residence, commonly known as 155 Benz Court, Fayetteville, Georgia (hereinafter the "Property") to the Defendant. The matter came before the Court for trial on February 10, 2012.

Debtor and the Defendant were married in 1986 and divorced on April 5, 2007. Debtor executed and delivered a quitclaim deed transferring his interest in the Property to the Defendant on or about March 10, 2008,[1] approximately ten months prior to the filing of Debtor's petition. At that time, the Property was worth $190,000 and was subject to a deed to secure debt.

Paragraph 2 of the Property Settlement Agreement (hereinafter the "Agreement"), which was incorporated into the parties' final divorce decree states as follows with regard to the Property:

---

1. The deed was recorded at this time as well.

[Debtor] shall maintain sole possession of the marital residence until such time as one of the following triggering events shall take place: (a) [Debtor's] death, (b) [Debtor's] remarriage, or (c) [Debtor's] decision to sell or otherwise dispose of the property in any way, including a voluntary or involuntary foreclosure. If one of said triggering events should take place, [Debtor] shall pay to [Defendant] 60% of the fair market value {footnote 1: determined as of the date of the divorce or the date of the triggering event, whichever is greater} within ninety {footnote 2: After ninety days, if [Debtor] has not paid, [Debtor] shall pay to [Defendant] a penalty.... If [Debtor] fails to pay after an additional 30 days (120 days after the execution of this agreement), [Debtor] shall pay to [Defendant] an additional 5% penalty; after every 30 days of non-payment, an additional penalty of 5% shall be owed to [Defendant]. [Debtor] may, at his option, quitclaim his interest in the property to [Defendant]; [Defendant] shall own said property free of any claim of [Debtor], and shall not be obligated to pay anything to [Debtor] under this provision} (90) days of the triggering event.... [Debtor] shall be responsible for all debts and expenses associated with said property, including mortgage payments, insurance, taxes, and upkeep. [Debtor] shall take indemnify and hold [Defendant] harmless from said debts and expenses. In addition, [Debtor] shall take steps to release [Defendant] from any obligation or liability on any mortgage or other debt secured by the residence. Upon receipt of payment and evidence of release from debt, [Defendant] shall execute and deliver all documentation required to transfer her interest in said property to [Debtor].

The Plaintiff argues that Debtor did not receive "reasonably equivalent value" because the Defendant did not pay for Debtor's ownership interest. The Defendant concedes that she received a transfer within two years preceding the filing of Debtor's petition, but argues that she gave Debtor "reasonably equivalent value" in exchange for his interest. Specifically, she asserts that the property settlement allowed Debtor to quitclaim the property to her in satisfaction of his obligation to pay her 60% of the value of the Property as of the date of the Agreement.

## CONCLUSIONS OF LAW

■ The issue before the Court is whether Debtor made a fraudulent transfer of his interest in the Property within the meaning of section 548(a) of the Bankruptcy Code.[2] The Plaintiff bears the burden of proving all elements under section 548(a)(1) by a preponderance of the evidence. *See In re Ojemeni,* 2008 WL 7870966, at *2 (Bankr.N.D.Ga. June 13, 2008) (Bihary, J.); *see also In re Chase & Sanborn Corp.,* 904 F.2d 588 (11th Cir. 1990); *In re Lary,* 338 B.R. 141 (Bank. M.D.Ga.2006).

■ Under section 548(a)(1), a trustee may avoid a transfer made within two years prior to the petition date if the debtor:

A) Made the transfer with the actual intent to hinder, delay, or defraud a creditor; or

B) Received less than reasonably equivalent value for that transfer and the debtor:

1) was insolvent at the time of the transfer or became insolvent as a result of the transfer;

**2.** In the pre-trial order, the Plaintiff limited the relief sought to section 548 of the Code.

2) was left after the transfer with insufficient capital to operate his or her business; or

3) intended to incur the debt which was beyond the debtor's ability to repay (to obvious detriment of the other prior creditors).

11 U.S.C. § 548(a)(1). Thus, a plaintiff must prove that: 1) the debtor transferred a property interest within the two-year period; and 2) the transfer was either actually or constructively fraudulent. While the Defendant admits that a transfer occurred within the two-year period, the Plaintiff did not present any evidence as to actual fraud. Therefore, the Court must determine whether the transfer was constructively fraudulent.

To establish constructive fraud, the trustee must prove that the debtor received less than reasonably equivalent value and either was insolvent at the time of transfer, was left with insufficient capital after the transfer to operate his business, or intended to incur a debt which was beyond his ability to repay. *See* 11 U.S.C. § 548(a)(1)(B). A plaintiff may also establish constructive fraud by proving that the debtor received less than reasonably equivalent value and the transfer was made to or for the benefit of an insider. *See id.*

■ Here, the only issue is whether Debtor received reasonably equivalent value. Whether a debtor received reasonably equivalent value is a three-part test, which considers: 1) whether the debtor received value; 2) whether the value received was in exchange for the property transferred; and 3) whether the value was reasonably equivalent to the value of the property transferred. *See In re Richards & Conover Steel, Co.*, 267 B.R. 602, 612 (8th Cir. BAP 2001).

■ As to the first factor, "value" is defined by the Code as "property, or satisfaction or securing of a present or antecedent debt of the debtor," excluding an unperformed promise to pay support to the debtor or debtor's relative. 11 U.S.C. § 548(d)(2)(A). A "debt" is defined as "liability on a claim." *Id.* § 101(12). A "claim" includes the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5). As to the second factor, "[a] transfer is in exchange for value if one is the quid pro quo of the other." *In re Kendall*, 440 B.R. 526, 532 (8th Cir. BAP 2010) (quoting *In re Richards & Conover Steel Co.*, 267 B.R. 602 (8th Cir. BAP 2001)).

■ From the evidence presented, it is clear that Debtor transferred his interest in the Property in payment of an antecedent debt. Under the Agreement, Debtor owed the Defendant, on a future, certain, yet undetermined date, at least $114,000, representing 60% percent of the Property's value as of the date of the parties' divorce. Therefore, at the time Debtor transferred his interest in the Property, the Defendant held an unmatured right to payment from Debtor of at least $114,000. Pursuant to section 101(5), this right constitutes a "claim" and, therefore, a "debt" under section 101(12). By transferring his interest in the Property, Debtor intended to satisfy a present or antecedent debt within the meaning of section 548(d)(2)(A).

■ The question remains, however, whether the value of Debtor's interest in the Property at the time of its transfer was "reasonably equivalent" to the amount Debtor owed to the Defendant. In other words, did the Defendant receive a greater amount than Debtor owed? Although the evidence is inconclusive, the Court agrees

with the Defendant that the Debtor did receive reasonably equivalent value or, alternatively, finds that the Plaintiff has failed to satisfy his burden of proof.

■ The determination regarding reasonable equivalent value is generally a question of fact and is to be made as of the date of the transfer. *See In re Southeast Waffles, LLC,* 460 B.R. 132, 139 (6th Cir. BAP 2011). The determination "does not demand a dollar-for-dollar exchange." *In re Advanced Telecommunication Network, Inc.,* 490 F.3d 1325, 1336 (11th Cir.2007) (quoting *In re Perry County Foods, Inc.,* 313 B.R. 875, 895 (Bankr.N.D.Ala.2004)). The Court need only ensure that "the debtor received a fair exchange," after examining "'all aspects of the transaction and carefully [measuring] the value of all benefits and burdens to the debtor, direct or indirect.'" *In re Richards & Conover Steel, Co.,* 267 B.R. at 612 (citations omitted).

To determine whether Debtor received reasonably equivalent value, the Court must first establish the amount of the debt owed by Debtor to the Defendant. The testimony established that the Property was worth more at the time of the divorce than at that the time of the transfer. Accordingly, the Court finds that Debtor owed Defendant $114,000 (60% of $190,000) at the time he transferred his interest in the Property to the Defendant.

Second, the Court must determine how much the Defendant received from Debtor in satisfaction of this debt. The Agreement is ambiguous as to the parties' intent with regard to the Property. It appears to the Court that the parties intended

Debtor to reside in the Property until such time as he remarried, died, or sold or otherwise disposed of the Property. Upon the occurrence of any of these events, Debtor would have been required to pay the Defendant for her share of the Property. Under what seems a logical reading of the Agreement, the Defendant would have been required at that time to transfer her one-half interest in the Property to Debtor (or a third party in the event of a sale or foreclosure). In other words, the Defendant would not have retained ownership of a one-half interest in the Property *and* received cash from Debtor. However, a footnote in the Agreement does suggest that Debtor *did* have the alternative option to simply walk away from his ownership interest in the Property by transferring it to the Defendant, rather than pay the Defendant $114,000 for her share of the Property.

For the sake of analysis, the Court will assume the first reading of the Agreement is correct. If the Defendant was required to transfer her one-half interest in the Property to Debtor in exchange for his payment of $114,000, but instead she received Debtor's one-half interest in payment of that debt and kept her own one-half interest in the Property, she essentially would have received the full value of the Property (as of the time of the transfer) in satisfaction of Debtor's obligation to pay $114,000. Otherwise, the Defendant would essentially keep her 50% interest and be paid for its value.[3]

But the Court cannot determine if the Defendant's receipt of the Property free and clear of Debtor's ownership interest

---

**3.** Alternatively, even if that is what the parties intended, the Court would likely be required to defer to the Superior Court's previous determination that the property division proposed by the parties and adopted by the Superior Court in its final decree was an equitable and fair property settlement. *See In re Erlewine,* 349 F.3d 205 (5th Cir.2003) (property division not a fraudulent transfer simply because the court divided the property unequally).

was reasonably equivalent value for the satisfaction of the $114,000 obligation without knowing the value of the Property at the time of the transfer. The Plaintiff presented no evidence as to how much the Property was worth at the time of the transfer, and the Defendant's evidence suggests only that the value of the Property was less than $190,000 and more than $100,000.

The actual value could make a difference in the Court's analysis. For example, if the Property was worth $150,000 at the time of the transfer, the Defendant's half interest would have been worth roughly $55,000 after deducting the estimated $40,000 remaining on the mortgage at the time. Debtor owed the Defendant $114,000, and that debt would have been reduced by the value of the Defendant's retained 50% interest ($55,000) to $59,000. Debtor would, therefore, have satisfied a debt of $59,000 with a transfer of property worth $55,000, in which case Debtor would have received more than the actual value of his interest in the Property. However, if the Property was worth $170,000 at the time of the transfer, Debtor would have owed the Defendant $49,000, and his interest in the Property would have been $65,000.

The Court is inclined to hold that, even if the Property was worth $170,000 at the time of the transfer, the satisfaction of a $49,000 debt by transferring an interest in property worth $65,000 constitutes a reasonably equivalent exchange. In any event, since the Court lacks any evidence regarding the value of the Property at the time of the transfer, the Court has no option other than to rule against the party with the burden of proof. The Plaintiff has failed to meet his burden of proving by a preponderance of the evidence that Debtor did not receive reasonably equivalent value for the transferred property. Therefore, the Court shall enter judgment in favor of the Defendant.