766 F.2d 482
 120 L.R.R.M. (BNA) 2689, 103 Lab.Cas. P 11,695
 Charles ROSEN, Joel Gray, Joel I. Keiler, et al., as
Trustees of the Hotel Employees-Hotel Association Insurance
Fund and Charles Rosen, et al., As Trustees of the Hotel
Employees-Hotel Association Pension Fund, Plaintiffs-Appellants,
v.
BISCAYNE YACHT & COUNTRY CLUB, INC., etc., et al.,
Defendants-Appellees.
 No. 84-5436.
 United States Court of Appeals,
Eleventh Circuit.
 July 23, 1985.
 
 Allan M. Elster, North Miami Beach, Fla., for plaintiffs-appellants.
 Hogg, Allen, Ryce, Norton & Blue, P.A., Susan Norton, Coral Gables, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT and HENDERSON, Circuit Judges, and NICHOLS*, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal by the trustees of the Hotel Employees-Hotel Association Insurance and Pension Funds from the grant of summary judgment by the United States District Court for the Southern District of Florida in favor of the appellees. Concluding that the district court did not err in granting the motion for summary judgment, we affirm.
 
 
 2
 Prior to 1974, members of Local 355 of the Hotel, Motel, Restaurant and Hi-Rise Employees Union (the local) established an insurance fund and a pension fund pursuant to two corresponding trust agreements.
 
 
 3
 On October 31, 1974, the appellee, Biscayne Yacht & Country Club (the club), and the local entered into a contract for wages and benefits for certain club employees. The portions of the contract that give rise to the present dispute are sections 1, 8, and 9 of Article XX.
 
 
 4
 Section 1. There is presently in operation an insurance fund designed to provide life, accident, health and hospitalization insurance to employees, known as HOTEL ASSOCIATION-HOTEL EMPLOYEES INSURANCE FUND, administered by HOTEL ASSOCIATION-HOTEL EMPLOYEES UNION TRUSTEES. Said Trust Fund has been established pursuant to Section 302 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. Section 186, hereinafter the Act. The trustees of said Fund have been duly appointed and qualified pursuant to the Act.
 
 
 5
 Section 8. Commencing December 1st, 1974, Employer will make contributions of five dollars and fourteen cents ($5.14) per month for each eligible employee for a dental plan.
 
 
 6
 Section 9. Commencing November 1st, 1976, Employer will make contributions of six dollars and twenty-four cents ($6.24) per month for each eligible employee for employee's pension benefits (retirement or pension fund).
 
 
 7
 (Emphasis supplied.) Although the club apparently made the payments of $5.14 per employee to the insurance fund until 1977, the trust agreement establishing that fund made no specific mention of the dental plan referred to in Sec. 8 until the agreement was amended in 1977. The trust agreement for the pension fund mentioned in Sec. 9, however, did provide, at the time the contract was signed in 1974, a detailed basis for making payments. Apparently, the pension fund trust agreement always contained a provision for annual audits of the funds, equal representation of employees and employer in the administration of the funds, and for arbitration in case of deadlocked vote. The 1974 collective bargaining contract did not expressly include such provisions, nor did the insurance fund trust agreement until it was amended in 1977, three years after the execution of the contract.
 
 
 8
 The club stopped paying into the funds in 1977. The fund trustees sued to compel payment of obligations for 1977 through 1979, as well as auditing costs and other incidental expenses. The appellee moved for summary judgment on all counts. The trial court granted the motion with respect to the appellants' claims for dental plan payments and pension plan payments, but denied summary judgment on the claim for the payments described in section 1 of the contract. The club does not appeal the latter ruling.
 
 
 9
 A grant of summary judgment is proper when, taking all the evidence in the light most favorable to the non-moving party, the court finds that no material issue of fact remains and that the movant is entitled to judgment as a matter of law. E.g., Clark v. Union Mutual Life Insurance Co., 692 F.2d 1370 (11th Cir.1982).
 
 
 10
 Sections 302(c)(5)(B) and (C) of the Labor Management Relations Act create an exception to Congress' otherwise sweeping prohibition against employer payments to union funds.[1] The objective behind this general prohibition was to prevent the misappropriation and dissipation of monies due the workers by union officials. Courts consequently require strict compliance with the Sec. 302(c) exception. E.g., Bricklayers Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1025 (5th Cir.1975). Sec. 302(c) provides that an agreement by an employer to make benefit payments to union funds is enforceable only if the union representative carries the burden of showing that the written agreement requires that (1) the money paid be held in trust for the worker's benefit only, (2) payments be made in accordance with a schedule or other detailed basis for calculating amounts due, (3) the fund or trust be audited annually, (4) the employer and union be equally represented in the management of the trust and (5) arbitration be invoked in the event of a deadlock vote in the management of the fund. Stuart. The 1974 collective bargaining contract lacks these safeguards, and therefore the contract standing alone does not furnish a basis for the enforcement of the club's promises contained in Secs. 1, 8 and 9 of Article XX.
 
 
 11
 Stuart establishes, however, that if the bargaining contract specifically incorporates the trust agreement of the fund to receive the payments, and that trust agreement itself satisfies Sec. 302(c), then the employer's promise to pay is enforceable. In Stuart, the court affirmed the grant of summary judgment even though such trust agreements existed at the time of the suit, but did not exist at the time of the execution of the collective bargaining. The court reasoned that it was impossible to satisfy Sec. 302(c) via an "incorporation by reference" approach if the trust agreements allegedly incorporated did not come into existence until after the employer-union collective bargaining contract.
 
 
 12
 In this case, Sec. 8 merely refers to "a dental plan" and does not, on its face, satisfy the Sec. 302(c) protections. The insurance fund trust agreement, which the appellants urge was incorporated by reference in the 1974 contract, did not provide for any dental payments or plan until 1977. Just as in Stuart, the subsequent amendment of the insurance fund trust agreement could not possibly have been incorporated when the parties drafted the earlier collective bargaining contract. The trust agreement existing in 1974 arguably could have been meant to apply to the dental plan payments, but it did not comply with the statutory requirements. Finally, although some dental plan payments were made by the club to the insurance fund between 1974 and 1977, Stuart holds that the mere fact that some payments were made cannot "supply the element of definiteness that Congress prescribed." 512 F.2d at 1029. By contrast, Sec. 1 of the 1974 contract explicitly incorporates the insurance fund trust agreement, which in 1974 specifically provided the necessary safeguards for the insurance payments promised in Sec. 1.
 
 
 13
 The district court also correctly granted summary judgment on the claim for pension plan payments under Sec. 9. Although the 1974 pension fund trust agreement contained the provisions required by Sec. 302(c), the club introduced uncontradicted evidence that the parties to the 1974 agreement did not intend such an incorporation. The depositions of both the employer and union representatives who drafted the contract were before the district court. They stated that in 1974 they did not intend to incorporate the pension trust agreement. Such testimony is not surprising, because Sec. 9 of the collective bargaining contract falls far short of the explicit language of Sec. 1, incorporating by reference the insurance fund agreement. This suggests that the parties knew the mechanics of incorporating the pension trust agreement into Sec. 9 but decided against such action. In the face of this strong evidence, the appellants offer nothing more than the bald assertion that Sec. 9 did achieve an incorporation. The appellants simply have not created a material issue of fact concerning the parties' intent in 1974 with respect to the incorporation of the pension trust agreement.
 
 The judgment of the district court is
 
 14
 AFFIRMED.
 
 
 
 *
 Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 In 1974 the statute provided in relevant part:
 Sec. 186. Restrictions on financial transactions
 (a) It shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value--
 (1) to any representative of any of his employees who are employed in an industry affecting commerce;
 ....
 (c) The provisions of this section shall not be applicable ...
 (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That ... (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute ... and [such agreement] shall also contain provisions for an annual audit of the trust fund ...
 29 U.S.C. Sec. 186 (1973) (amended 1978).