In the Matter of SOUTHERN HOME AND RANCH SUPPLY, INC., Debtor.

Griffin Howell, III, Chapter 7 Trustee, Plaintiff,

v.

James R. Fulford and SRH Holding Company, LLC, Defendants.

Bankruptcy No. 11–12755–WHD. Adversary No. 13–1043.

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed Aug. 11, 2014.

John A. Christy, Kelly L. Walsh, Schreeder, Wheeler & Flint, LLP, Atlanta, GA, for Plaintiff.

J. Nevin Smith, Smith Conerly LLP, Carrollton, GA, for Defendants.

### ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is the Motion for Summary Judgment, filed by James R. Fulford (hereinafter "Fulford") and SRH Holding Company, LLC (hereinafter "SRH" and, collectively with Fulford, the "Defendants"). The Motion arises in connection with a complaint (hereinafter the. "Complaint") to avoid and recover an allegedly fraudulent transfer, filed by Griffin Howell, III (hereinafter the "Trustee") in his capacity as the Chapter 7 trustee of the bankruptcy estate of Southern Home and Ranch Supply, Inc. (hereinafter the "Debtor"). This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(H); § 1334.

### PROCEDURAL HISTORY

On August 18, 2011 (hereinafter the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Subsequently, the Trustee filed the Complaint against the Defendants, seeking to avoid the transfer of substantially all of the Debtor's assets to or for the benefit of the Defendants and to recover such assets for the benefit of the Debtor's estate. On September 16, 2013, the Defendants filed a motion to dismiss the Complaint, which the Court denied on May 1, 2014. The Defendants subsequently filed the instant motion for summary judgment, which the Trustee opposes.

1. *See* Defendants' Statement of Undisputed Facts, ¶ 15; Trustee's Response to Defendants' Statement of Undisputed Facts, ¶ 15.

2. The Court makes findings of fact regarding the amount and nature of the three checks issued by Fulford to the Debtor prior to the

### FINDINGS OF FACT

Prior to the Petition Date, the Debtor, formerly known as Builder's Station, Inc.,[1] operated several construction supply and hardware stores in North Georgia. Tr. of Rule 2004 Examination of Ray Fulford, April 25, 2013 (hereinafter "Fulford Examination"), at 52; Tr. of Rule 2004 Examination of John Patrick Malloy, Jr., May 8, 2013 (hereinafter "Malloy Examination"), at 15. On the Petition Date, Fulford, along with his brother, John D. Fulford, and John Patrick Malloy, Jr. (hereinafter "Malloy"), was a member of the Debtor's board of directors. Malloy Examination, at 12–13. Fulford owned a 25% interest in the Debtor. Fulford Examination, at 12. Fulford is also the sole owner of defendant SRH, which was organized under the laws of the State of Georgia on June 9, 2010. Defs.' Statement of Undisputed Facts (hereinafter "Defendants' SUF"), ¶ 13; Trustee's Resp. to Defendants' SUF (hereinafter "Response to SUF"), ¶ 13.

The Debtor began experiencing financial distress in approximately 2007. Malloy Examination, at 18–19. The Debtor asked Fulford for money to "pay bills," including payroll and supplies, and Fulford provided funds to the Debtor on three separate occasions: (1) $350,000 on or about March 25, 2008; (2) $500,000 on December 11, 2008; and (3) $500,000 on February 2, 2009. Fulford Examination, at 37–46, 77; Aff. of James R. Fulford (hereinafter "Fulford Affidavit"), ¶¶ 2–9; Malloy Examination, at 33–38, 58. The Debtor appears to have paid interest on these advances, but made no principal payments.[2] Malloy Ex-

2009 Note solely for purposes of this Motion. The Trustee asserts that the Court should not consider Fulford's affidavit testimony regarding the original three checks given by Fulford to the Debtor or the attached promissory notes associated therewith because such testimony and documentary evidence is contrary

amination, at 35; Fulford Examination, at 39; Fulford Affidavit, ¶¶ 4–5.

In or about March 2009, the Debtor executed a promissory note with a one-year term, dated March 1, 2009 (hereinafter the "2009 Note"). Defendants' SUF, ¶ 5, Response to SUF, ¶ 5 (not disputing the authenticity of the 2009 Note). The 2009 Note obligated the Debtor to pay Fulford $1,350,000 with interest of 6% per annum and required monthly interest payments. *See* Fulford Affidavit Ex. 6. Fulford intended the 2009 Note to replace or combine the earlier three advances made by Fulford to the Debtor. Fulford Examination, at 47; Malloy Examination, at 42.

The Debtor also executed a security agreement dated March 1, 2009 (hereinafter the "Security Agreement"). Defendants' SUF, ¶ 5; Response to SUF, ¶ 5 (not disputing the authenticity of the Security Agreement). The Security Agreement granted Fulford a security interest in certain of the Debtor's assets (the "Collateral") to secure the repayment of the 2009 Note, subject to and subordinate to "a certain Security Agreement from Debtor in favor of Branch Banking & Trust Company" (hereinafter "BB & T"). *See* Fulford Affidavit Ex. 7, at 6. The Collateral included "all furnishings, fixtures, machinery, equipment, appliances, vehicles, supplies and materials, books and records, chattels, inventory, accounts, accounts receivable, contracts, contract rights, consumer goods, general intangibles, and personal property of every kind and nature whatsoever [then] or [thereafter] owned by Debtor" and any proceeds thereof. *See id.* at ¶ 2. Fulford recorded a UCC Financing Statement regarding the Collateral in the official records of the Clerk of the Superior Court of Carroll County, Georgia on August 12, 2009. Fulford Affidavit, ¶ 12 & Ex. 8.

When the 2009 Note matured in March 2010, the Debtor did not pay Fulford the amounts owed thereunder. Defendants' SUF, ¶ 12; Response to SUF, ¶ 12. On June 30, 2010, Fulford assigned his interest in the 2009 Note and the Security Agreement to SRH. Defendants' SUF, ¶ 14, Response to SUF, ¶ 14. Also on June 30, 2010, the Debtor executed an Agreement for Voluntary Surrender of Collateral and Consent to Proposal to Accept Collateral in Full Satisfaction of Obligation (hereinafter the "CSA"). Defendant's SUF, ¶ 15; Response to SUF, ¶ 15. Pursuant to the CSA, which was approved by all of the Debtors' shareholders, the Debtor surrendered the Collateral to SRH (hereinafter the "Transfer"). Defendants' SUF, ¶¶ 15–16; Response to SUF, ¶¶ 15–16. The Collateral included substantially all of the Debtor's assets, including inventory and any lease required to operate the

---

to Fulford's earlier deposition testimony. The Court does not agree that Fulford's affidavit necessarily contradicts Fulford's deposition testimony. In his deposition, Fulford testified that he could not recall whether the three checks he issued to the Debtor in 2008 and 2009 were ever evidenced by promissory notes. Such testimony is not the same as testifying that such notes did not exist. That being said, the Court recognizes that the Trustee may have been disadvantaged by Fulford's deposition testimony or, more importantly, his failure to produce copies of the notes during discovery and his production, via an affidavit, of those notes after the discovery period had closed and a motion for summary judgment was pending. Because the Court finds below that the question of reasonably equivalent value cannot be resolved by the instant motion for summary judgment due to a factual dispute over the value of the Collateral, the Court will also leave for trial any questions regarding the nature of the funds given by Fulford to the Debtor prior to the 2009 Note, as well as the existence and amount of any interest payments made by the Debtor to Fulford.

Debtor's stores. Fulford Examination, at 61–63.

At the time of the Transfer, Fulford asserted that the Debtor owed the principal amount of $1,350,000 plus some amount of accrued and unpaid interest. Fulford Affidavit, ¶ 20; Trustee's Complaint, ¶ 10. Fulford intended the Transfer to be in "full satisfaction of the obligation evidenced by" the 2009 Note. Fulford Affidavit, Ex. 16; Fulford Examination, at 36. Prior to the Transfer, Fulford also paid $1,281,347.38 to BB & T with the intent of paying off a debt owed by the Debtor to BB & T, thus obtaining a first position lien on the Collateral. Fulford Examination, at 66; Fulford Affidavit, ¶ 21; Defendants' SUF, ¶ 18; Response to Defendants' SUF, ¶ 18 (not disputing the fact that Fulford paid some amount of money to BB & T related to the debt owed by the Debtor to BB & T). After the Transfer, SRH owned the Collateral. Defendants' SUF, ¶ 19; Response to SUF, ¶ 19.

### CONCLUSIONS OF LAW

The Trustee seeks to avoid the Transfer as either an actual or constructively fraudulent transfer, pursuant to sections 544 and 548 of the United States Bankruptcy Code (hereinafter the "Code"). Upon avoidance, the Trustee seeks to recover the assets transferred for the benefit of the Debtor's bankruptcy estate under section 550(a) of the Code. The Defendants assert that the Trustee lacks evidence to establish at least one of the required elements under sections 544 and 548 of the Code. Thus, the Defendants seek summary judgment as to all claims.

### A. *Summary Judgment Standard*

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c); *see also Hairston v.*

*Gainesville Sun Publ'shg Co.*, 9 F.3d 913, 918–19 (11th Cir.1993). Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... [his] case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... [his] case at trial.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc)).

Once the moving party establishes its basis for the motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To do so, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (quoting *First Nat'l Bank v.*

*Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## B. *11 U.S.C. §§ 548 and 544*

█ The Trustee seeks to avoid the Transfer under sections 548(a) and section 544 of the Code (relying upon O.C.G.A. § 18–2–77) and to recover the assets transferred (or their value) from the Defendants under section 550(a) of the Code. "Under either § 548 or § 544(b), [the Trustee] bears the burden of proof by a preponderance of the evidence." *See Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*, 511 B.R. 163, 194 (Bankr.S.D.Ala. 2014); *Anderson v. Patel (In re Diplomat Const., Inc.)*, Adversary No. 11–5611, 2013 WL 5591918, at *4 (Bankr.N.D.Ga. Aug. 6, 2013) (Diehl, J.); *Bakst v. United States (In re Kane & Kane)*, 479 B.R. 617, 631 (Bankr.S.D.Fla.2012) ("The Trustee has the burden of proving all aspects of the alleged fraudulent transfers under §§ 548 and 550(a)(1) . . . . [including] proving that the Defendant is an initial transferee within the meaning of § 550(a)(1) if relevant to the action.").

Under section 548(a)(1), a trustee may avoid a transfer made within two years prior to the petition date if the debtor:

A) Made the transfer with the actual intent to hinder, delay, or defraud a creditor; or

B) Received less than reasonably equivalent value for that transfer and the debtor:

1) was insolvent at the time of the transfer or became insolvent as a result of the transfer;

2) was left after the transfer with insufficient capital to operate his or her business; or

3) intended to incur the debt which was beyond the debtor's ability to repay (to obvious detriment of the other prior creditors).

11 U.S.C. § 548(a)(1). Thus, to succeed under section 548(a)(1), the Trustee must prove that: 1) the Debtor transferred a property interest within the two-year period; and 2) the transfer was either actually or constructively fraudulent.[3]

In this case, it is undisputed that the Debtor transferred a property interest within the two-year period. The Defendants submit, however, that there is insufficient record evidence from which a reasonable fact finder could conclude that the Debtor made the Transfer with actual fraudulent intent or that the Debtor re-

---

**3.** Similarly, through section 544(b)(1) of the Code, the Trustee may rely upon applicable state law, here, O.C.G.A. § 18–2–77(a)(1), to avoid a fraudulent transfer that would have been avoidable by a creditor of the debtor holding an unsecured claim that is allowable under section 502 of the Code. *See* 11 U.S.C. § 544(b); *In re Palisades at West Paces Imaging Center, LLC*, 501 B.R. 896, 907 (Bankr. N.D.Ga.2013) (Hagenau, J.). Under Georgia law, a transfer is fraudulent as to an existing creditor: (1) if the debtor did not receive reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer; or (2) if the transfer was made to an insider for an antecedent debt, the debtor was insol-

vent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." O.C.G.A. § 18–2–75. A transfer is also fraudulent as to existing or future creditors "if the debtor made the transfer: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer and (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. O.C.G.A. § 18–2–74(a).

ceived less than reasonably equivalent value for the Transfer.

### 1. *Actual Fraud*

 Intent to hinder, delay, or defraud creditors is ordinarily established by circumstantial evidence. *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998). In that regard, courts consider the existence of certain "badges of fraud," which include:

1. The transfer was to an insider;

2. The debtor retained possession or control of the property transferred after the transfer;

3. The transfer was disclosed or concealed;

4. Before the transfer was made the debtor had been sued or threatened with suit;

5. The transfer was of substantially all the debtor's assets;

6. The debtor absconded;

7. The debtor removed or concealed assets;

8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

9. The debtor was insolvent or became insolvent shortly after the transfer was made;

10. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[4]

*Id.* at 1272; *see also Kipperman v. Onex Corp.*, Civ. Action No. 1:05–CV–1242–JOF,

2007 WL 2872463, at *9 (N.D.Ga. Sept. 26, 2007).

"No specific combination of badges is necessary for a finding of actual intent and the presence of any of the badges of fraud does not compel such a finding." *Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*, Adversary No. 12–00060–MAM, 2013 WL 2422703, at *15 ·(Bankr.S.D.Ala. June 4, 2013) (citing *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 10 n. 13 (S.D.N.Y.2007)). Rather, the "badges merely highlight circumstances that suggest that a transfer was made with fraudulent intent," and whether such is the case "is a heavily fact-dependent question" that is rarely amenable to summary judgment. *Id.* (citing *In re Canyon Sys. Corp.*, 343 B.R. 615, 636 (Bankr.S.D.Ohio 2006)).

 Here, the Defendants have not demonstrated by either affirmative evidence or pointing to a lack of evidence that the Trustee cannot carry his· burden at trial regarding the Debtor's intent to transfer its assets to SRH. There is sufficient evidence from which a reasonable trier of fact could find that several badges of fraud exist to support the Trustee's contentions that the Transfer was made with the intent to hinder, delay, or defraud the Debtor's creditors.

First, sufficient record evidence supports the finding that the Debtor made the Transfer to an insider of the Debtor and that the Transfer was made for the purpose of satisfying an antecedent debt owed to an insider. The Debtor transferred the Collateral to SRH, which was wholly owned by Fulford, who was a 25% shareholder of the Debtor, a director of the Debtor, and the brother of another of the Debtor's directors.[5] Second, there is no

---

**4.** Georgia law also relies upon these same "badges of fraud." *Id.* § 18–2–74(b).

**5.** SRH meets the statutory definition of "insider" under both Georgia law and the Code. SRH was wholly owned by Fulford, a director

dispute that the Transfer constituted substantially all of the Debtor's assets or that the assets transferred *were* the Debtor's business, including the leases to operate the remaining stores. Third, given the fact that the Debtor had no assets after the Transfer, there can be no serious dispute that the Debtor was at least rendered insolvent by the Transfer. Fourth, as will be explained further below, factual issues remain regarding whether the Debtor received reasonably equivalent value for the Transfer. A reasonable juror could conclude that the Debtor's assets were worth significantly more than the Debtor received and, therefore, the exchange was made for less than reasonably equivalent value.

"While the Trustee's theory is far from established, it is sufficient to raise a genuine issue of material fact regarding the Debtor's intent" in making the Transfer. *Vista Bella*, 2013 WL 2422703, at *15.

"Needless to say, the Trustee's allegations are disputed. However, those allegations do create factual issues that preclude summary judgment." *Id.*

### 2. *Constructive Fraudulent Transfer*

■ To establish constructive fraud under section 548 of the Code, the Trustee must prove that the Debtor received less than reasonably equivalent value in exchange for the transferred assets and either was insolvent at the time of the transfer, was left with insufficient capital after the transfer to operate its business, or intended to incur a debt which was beyond its ability to repay. *See* 11 U.S.C. § 548(a)(1)(B).[6] The Defendants take issue with the Trustee's ability to establish that the Debtor did not received reasonably equivalent value in exchange for the Transfer.

■ In determining whether a debtor received reasonably equivalent value,

---

of the Debtor, and Fulford owned more than 20% of the stock of the Debtor. This fact made SRH an "affiliate" of the Debtor and an insider of an "affiliate" of the Debtor (Fulford). *See* 11 U.S.C. § 101(31)(E) (if the debtor is a corporation, an insider includes an affiliate of the debtor); § 101(2)(B) (an "affiliate" of the debtor includes a corporation 20% or more of whose voting securities are owned by an entity that directly or indirectly owns 20% of more of the voting securities of the debtor); 101(9) (defining corporation); *In re Brooke Corp.*, 506 B.R. 560 (Bankr.D.Kan. 2014) (holding that a limited liability company is included within the Code's definition of "corporation"); O.C.G.A. § 18–2–71(7)(D) (insider includes an "affiliate" of the debtor or an insider of an "affiliate"); § 18–2–71(1)(B) (defining "affiliate" to include a corporation 20% or more of whose outstanding voting securities are owned by a person who directly or indirectly owns 20% or more of the outstanding voting securities of the debtor). Combining these two definitions, SRH was an affiliate, and therefore, an insider, of the *Debtor because Fulford owned SRH and* more than 20% of the stock of the Debtor. Alternatively, under section 101(31)(E) of the

Code and O.C.G.A. § 18–2–71(7)(D), insider includes an "insider of an affiliate as if such affiliate were the debtor," and, under section 101(2)(A) of the Code and O.C.G.A. § 18–2–71(7)(A)(iv), Fulford was an affiliate of the Debtor (as an owner of 20% or more of the Debtor's voting securities) and SRH was an insider of Fulford (as a corporation of which Fulford was a director, officer, or person in control).

**6.** To prevail on his constructive fraud claim under section 544 of the Code and O.C.G.A. § 18–2–77, the Trustee must establish that the Debtor did not receive "reasonably equivalent value" in exchange for the transfer and either: (1) was insolvent at the time of the transfer or became insolvent as a result of the transfer, O.C.G.A. § 18–2–75(a); (2) "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (3) intended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due," O.C.G.A. § 18–2–74(a)(2).

courts apply a three-part test, which considers: 1) whether the debtor received value; 2) whether the value received was in exchange for the property transferred; and 3) whether the value was reasonably equivalent to the value of the property transferred. *See In re Richards & Conover Steel Co.*, 267 B.R. 602, 612 (8th Cir. BAP 2001); *Vista Bella, Inc.*, 2013 WL 2422703, at *22.

 As to the first factor, "value" is defined by the Code as "property, or satisfaction or securing of a present or antecedent debt of the debtor," excluding an unperformed promise to pay support to the debtor or debtor's relative. 11 U.S.C. § 548(d)(2)(A).[7] For this purpose, a "debt" is defined as "liability on a claim," *id.* § 101(12)[8], and a "claim" includes the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," *id.* § 101(5).[9] Moreover, if a defendant asserts that a transfer was made in exchange for the satisfaction of a "debt," a bankruptcy court may determine whether, under applicable state law, the debtor was in fact obligated to pay a "debt." *See In re Fitness Holdings Int'l*, 714 F.3d 1141, 1147–48 (9th Cir.2013) (holding that the bankruptcy court was permitted to determine whether an alleged debt should be recharacterized as equity).

 As to the second factor, "[a] transfer is in exchange for value if one is the *quid pro quo* of the other." *In re Kendall*, 440 B.R. 526, 532 (8th Cir. BAP 2010) (quoting *Richards & Conover Steel*, 267 B.R. at 612). Accordingly, a transfer made by a debtor in satisfaction of a present or antecedent debt can constitute a transfer made for reasonably equivalent value if the value of the property is reasonably equivalent to the amount owed by the debtor to the transferee. *See Fitness Holdings Int'l*, 714 F.3d at 1145–46; *Freeland v. Enodis Corp.*, 540 F.3d 721, 735 (7th Cir.2008) (holding that the payment of accrued interest is "reasonably equivalent value" because it is the "dollar-for-dollar forgiveness of a contractual debt") (quoting *In re Carrozzella & Richardson*, 286 B.R. 480, 491 (D.Conn.2002)).

 The determination regarding reasonable equivalent value is generally a question of fact and is to be made as of the date of the transfer. *See In re Southeast Waffles, LLC*, 460 B.R. 132, 139 (6th Cir. BAP 2011). The determination "does not demand a dollar-for-dollar exchange." *In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325, 1336 (11th Cir.2007) (quoting *In re Perry County Foods, Inc.*, 313 B.R. 875, 895 (Bankr.N.D.Ala.2004)). Rather, the Court need only ensure that "the debtor received a fair exchange," after examining "'all aspects of the transaction and carefully [measuring] the value of all benefits and burdens to the debtor, direct or indirect.'" *Richards & Conover Steel*, 267 B.R. at 612 (citations omitted).

Therefore, to determine whether the Debtor received reasonably equivalent value in exchange for its interest in the Collateral, the Court must first ascertain the amount of the debt owed by the Debtor to SRH at the time of the Transfer and find that the debt was satisfied in exchange for the Debtor's interest in the Collateral. Second, the Court must determine whether the Debtor received any other benefits

---

7. Likewise, O.C.G.A. § 18–2–73(a) defines "value" to include the securing or satisfaction of antecedent debt.

8. *See also* O.C.G.A. § 18–2–71(5).

9. *See also* O.C.G.A. § 18–2–71(3).

in exchange for its rights in the Collateral and, if so, value such other benefits. Third, the Court must value the Debtor's interest in the Collateral. Finally, the Court must consider whether the value of the Collateral at the time of the Transfer was reasonably equivalent to the sum of the debt satisfied and the value of all other benefits received by the Debtor.

The Defendants assert that there is no evidence to support the Trustee's contention that the Debtor did not receive reasonably equivalent value in exchange for its interest in the Collateral. Rather, the Defendants submit that they have provided evidence to establish that the Debtor owed SRH at least $1,350,000 in antecedent debt, which was satisfied in exchange for the Transfer, and the Debtor received a benefit from Fulford of an additional $1,281,347.38 when Fulford paid that amount to BB & T on the Debtor's behalf. The Trustee, however, offered evidence that the value of the Collateral was approximately $700,000 greater than the sum of these two amounts. Although the De-

fendants question the weight of the Trustee's evidence on value (because it is a balance sheet from six months prior to the date of the Transfer), they failed to offer any evidence of the Collateral's value. Accordingly, the Court concludes that the Trustee's evidence creates a question as to what is likely to be the most important fact in this case—the value of what the Debtor gave up in exchange for the satisfaction of a debt allegedly owed to an insider.

CONCLUSION

For the reasons stated above, the Court finds that the Defendants' Motion for Summary Judgment should be, and hereby is, **DENIED.**

**IT IS ORDERED.**